# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2016-NMSC-016**

**Filing Date: April 14, 2016**

**Docket No. S-1-SC-34613**

**PHILLIP G. RAMIREZ, JR.,**

       **Plaintiff-Petitioner,**

**v.**

**STATE OF NEW MEXICO CHILDREN, YOUTH
AND FAMILIES DEPARTMENT, DORIAN DODSON,
in her individual and official capacities, RON WEST, in his
individual and official capacities, BARBARA AUTEN,
in her individual and official capacities, ROGER GILLESPIE,
in his individual and official capacities, TED LOVATO, in his
individual and official capacities, TIM HOLESINGER, in his
individual and official capacities, DANIEL BERG, in his individual
and official capacities,**

       **Defendants-Respondents,**

**and**

**NEW MEXICO ATTORNEY GENERAL'S OFFICE,**

       **Intervenor.**

**ORIGINAL PROCEEDING ON CERTIORARI
Camille Martinez-Olguin, District Judge**

Vega Lynn Law Offices, LLC
Rosario D. Vega Lynn
Albuquerque, NM

Lorenz Law
Alice Tomlinson Lorenz
Albuquerque, NM

for Petitioner

Hinkle Shanor, LLP
Ellen S. Casey
Jaclyn M. McLean
Loren S. Foy
Santa Fe, NM

for Respondent

Hector H. Balderas, Attorney General
Robert David Pederson, Assistant Attorney General
Phillip Patrick Baca, Assistant Attorney General
Albuquerque, NM

for Intervenor

Serra & Garrity, PC
Diane M. Garrity
Santa Fe, NM

Reserve Officers Association
Samuel F. Wright
Washington, DC

Law Office of Thomas G. Jarrard, PLLC
Thomas G. Jarrard
Spokane, WA

Robert Mitchell Attorney at Law, PLLC
Robert W. Mitchell
Spokane, WA

for Amicus Curiae Reserve Officers Association of America

Office of the U.S. Attorney
Damon P. Martinez, U.S. Attorney
Manuel Lucero, Assistant U.S. Attorney
Albuquerque, NM

Department of Justice Civil Rights Division
Nathaniel S. Pollock
Washington, DC

for Amicus Curiae United States

Garcia Ives Nowara, LLC
George L. Bach
Albuquerque, NM

for Amicus Curiae American Civil Liberties Union of New Mexico

**OPINION**

**NAKAMURA, Justice.**

**{1}** We are called to decide whether a New Mexico National Guard member may assert a claim against the State as employer under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), 38 U.S.C. §§ 4301-4335 (2012). Phillip Ramirez, a member of the New Mexico Army National Guard, was employed by the New Mexico Children, Youth and Families Department (CYFD). In July 2005, Ramirez was ordered to federal active duty and deployed to Iraq. After Ramirez returned to work in New Mexico, CYFD terminated his employment. Ramirez sued CYFD, asserting a USERRA claim. A jury found that CYFD took adverse employment actions against Ramirez because of his military service and awarded him monetary damages. The Court of Appeals reversed the damages award, concluding that CYFD as an arm of the State was immune to Ramirez's USERRA claim. *Ramirez v. State ex rel. Children, Youth & Families Dep't*, 2014-NMCA-057, ¶¶ 1, 27, 326 P.3d 474, *cert. granted*, 2014-NMCERT-005. We disagree. By enacting NMSA 1978, Section 20-4-7.1(B) (2004), the Legislature specifically extended "[t]he rights, benefits and protections" of USERRA to members of the New Mexico National Guard who are ordered to federal or state active duty for a period of thirty or more consecutive days. In so doing, the Legislature consented to suits brought against state employers who violate the protections guaranteed by USERRA. Accordingly, we reverse and reinstate the district court's judgment and damages award.

**I. BACKGROUND**

**A. USERRA**

**{2}** Congress enacted USERRA to encourage noncareer military service, to minimize disruptions in the lives and communities of those who serve in the uniformed services, and "to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a)(1)-(3). Congress created USERRA pursuant to its War Powers set forth in Article I, Section 8, Clause 11 of the United States Constitution. *Bedrossian v. Nw. Mem'l Hosp.*, 409 F.3d 840, 843-44 & n.2 (7th Cir. 2005). In pertinent part, USERRA provides:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment,

3

retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311(a). USERRA's antidiscrimination rights apply to states as employers. *See* 38 U.S.C. § 4303(4)(A)(iii) (defining the term "employer" to include "a State"). To enforce these guarantees, USERRA creates a private right of action for qualified service members to recover monetary damages against a state as an employer. 38 U.S.C. § 4323(a)(3), (d)(1)(B)-(C).

**{3}** Congress originally conferred jurisdiction on the federal district courts to adjudicate USERRA actions brought by private individuals against state employers. Uniformed Services Employment and Reemployment Rights Act of 1994, Pub. L. No. 103-353, 108 Stat. 3149, 3165 (1994) (providing that "[i]n the case of an action against a State as an employer, the appropriate district court is the court for any district in which the State exercises any authority") (current version at 38 U.S.C. § 4323(b)). In *Seminole Tribe of Florida v. Florida*, however, the Supreme Court rejected Congress's authority under the powers granted by Article I of the United States Constitution to abrogate a state's sovereign immunity and subject nonconsenting states to suit in federal court. 517 U.S. 44, 72 (1996). Because Congress enacted USERRA pursuant to its War Powers granted by Article I, Section 8, *Seminole Tribe* cast doubt on the federal courts' jurisdiction to adjudicate USERRA actions for monetary damages against states as employers. *See, e.g.*, *Palmatier v. Mich. Dep't of State Police*, 981 F. Supp. 529, 532 (W.D. Mich. 1997) (dismissing a USERRA claim against the Michigan entities for lack of jurisdiction).

**{4}** In 1998, Congress amended USERRA's jurisdictional provision concerning claims against state employers to provide that "[i]n the case of an action against a State (as an employer) by a person, the action may be brought in a State court of competent jurisdiction in accordance with the laws of the State." Veterans Programs Enhancement Act of 1998, Pub. L. No. 105-368, § 211(a), 112 Stat. 3315, 3329 (1998) (codified as amended at 38 U.S.C. § 4323(b)(2)). With this amendment, Congress sought to channel private USERRA claims against state employers to state courts. *See* 38 U.S.C. § 4323(b)(2). Given this background, Ramirez asserted a USERRA claim against CYFD in New Mexico district court.

### B.    Ramirez's USERRA claim

**{5}**    Ramirez joined the New Mexico National Guard on August 22, 1991. On April 9, 1997, CYFD hired him as a surveillance officer. In November 2005, Ramirez was deployed to Iraq where he led a platoon charged with providing security escort to supply convoys. After his service in Iraq, Ramirez was transferred to Kuwait, where on May 13, 2006, he was promoted to Sergeant First Class. Ramirez returned to Gallup in November 2006.

**{6}**    Ramirez resumed employment with CYFD on January 2, 2007 under the supervision

of Daniel Berg and Tim Holesinger. Within a few months of his return, Ramirez's relationship with his supervisors deteriorated. Berg and Holesinger allegedly harassed and reprimanded Ramirez for being insubordinate. On May 8, 2008, CYFD terminated his employment.

**{7}** On May 19, 2008, Ramirez filed a lawsuit in the Eleventh Judicial District Court against CYFD, the former secretary of CYFD, Holesinger, Berg, and others at CYFD who supervised Ramirez, alleging a USERRA claim for monetary relief and other claims arising under federal and state law. CYFD moved to dismiss Ramirez's USERRA claim on grounds that, as a state agency, it was immune to USERRA claims brought by private individuals. The record indicates that the district court did not specifically rule on that motion and commenced a jury trial on, inter alia, Ramirez's USERRA claim. During trial, CYFD moved for a directed verdict with respect to the USERRA claim. The district court denied that motion. The jury found that Ramirez's military service was a motivating factor for the adverse employment actions taken by CYFD and returned a verdict in his favor, awarding him $36,000 in damages for lost earnings. The district court entered the judgment and award in favor of Ramirez.

**{8}** CYFD appealed, and the Court of Appeals reversed. *Ramirez*, 2014-NMCA-057, ¶ 1. In a divided opinion, the Court of Appeals held that CYFD, as a state agency, was immune to Ramirez's USERRA claim. *See id.* The Court of Appeals determined that the Legislature had not waived New Mexico's sovereign immunity with respect to Ramirez's USERRA claim because the Legislature had not spoken with "the requisite specificity required to determine . . . [an] inten[tion] to waive the State's constitutional sovereign immunity to private USERRA suits for damages." *Id.* ¶ 19. The Court of Appeals also held that CYFD was immune to Ramirez's USERRA claim because, in the absence of a state's consent to suit, Congress lacks the power to abrogate a state's sovereign immunity when acting pursuant to its War Powers. *Id.* ¶¶ 17-18.

**{9}** We granted Ramirez's petition for a writ of certiorari to consider whether New Mexico is immune to private USERRA suits for damages, exercising our appellate jurisdiction provided by Article VI, Section 3 of the New Mexico Constitution and NMSA 1978, Section 34-5-14(B) (1972). We also granted the New Mexico Office of the Attorney General's motion to intervene and allowed amicus curiae briefs from the United States, the Reserve Officers Association of America, and the American Civil Liberties Union of New Mexico.

## II. DISCUSSION

### A. State sovereign immunity should be determined at the outset of litigation

**{10}** The procedural history of Ramirez's USERRA claim in the district court gives us pause. In its motion to dismiss, CYFD argued that the USERRA claim should be dismissed for lack of subject matter jurisdiction because CYFD was immune from suit. CYFD

5

requested a hearing on that motion, and the district court held a hearing on February 9, 2010. At the hearing, the district court announced it would issue a written ruling. The record, however, contains no indication that the district court ruled on CYFD's motion, and CYFD maintains that the district court did not so rule.

**{11}** When the State moves to dismiss a plaintiff's claim by raising the affirmative defense of sovereign immunity invoking the lack of subject matter jurisdiction, the district court must rule on that motion before allowing the claim to proceed. *See Gonzales v. Surgidev Corp.*, 1995-NMSC-036, ¶ 12, 120 N.M. 133, 899 P.2d 576 ("Subject matter jurisdiction is [a court's] power to adjudicate the general questions involved in the claim."). This is a matter of both principle and practice. First, sovereign immunity protects the State not only from liability but also from suit. *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 766 (2002). Courts may not allow a plaintiff to impose on the State the expense of litigating a claim to which it is immune. *See id.* at 765 ("[S]tate sovereign immunity serves the important function of shielding state treasuries and thus preserving the [state's] ability to govern." (internal quotation marks and citation omitted)). Second, if the State properly invokes its sovereign immunity to a pending claim, "any [ruling] regarding that claim is advisory to the extent that it addresses issues other than immunity." *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012). And "[w]e avoid rendering advisory opinions." *City of Las Cruces v. El Paso Elec. Co.*, 1998-NMSC-006, ¶ 18, 124 N.M. 640, 954 P.2d 72. Third, as a matter of judicial administration, if the State raises the defense of sovereign immunity to a claim, that issue should be decided well before the claim goes to a jury—not after a jury has rendered a verdict. *See Gonzales*, 1995-NMSC-036, ¶ 12.

**{12}** In this case, we conclude that the Legislature consented to private USERRA actions for damages. Hence, the risks associated with not deciding a state sovereign immunity defense at the outset did not materialize. Nevertheless, we reiterate that the defense of state sovereign immunity should be adjudicated at the outset of litigation, instead of permitting the issue to be decided after the expense of trial.

## B.      USERRA and state sovereign immunity

### 1.      Standard of review

**{13}** We review de novo whether New Mexico is immune in its own courts to a claim for damages arising under federal law. *See Manning v. Mining & Minerals Div. of Energy, Minerals & Nat. Res. Dep't*, 2006-NMSC-027, ¶ 9, 140 N.M. 528, 144 P.3d 87. Further, whether the Legislature waived New Mexico's sovereign immunity with respect to USERRA claims filed by private individuals in state court is an issue of statutory interpretation that is also subject to de novo review. *Moongate Water Co. v. City of Las Cruces*, 2013-NMSC-018, ¶ 6, 302 P.3d 405.

### 2.      State sovereign immunity and congressional legislation enacted under the War Powers Clause

**{14}** As framed by the parties, this case principally concerns whether the War Powers Clause grants Congress the power to abrogate a state's sovereign immunity to suit in its own courts. To enforce the rights furnished to private individuals by USERRA against state employers, Congress subjects the states to private actions for money damages in their own courts. *See* 38 U.S.C. § 4323(b)(2). The parties dispute whether this statutory provision is beyond Congress's power to enact.

**{15}** This case concerns New Mexico's sovereign immunity to federal causes of action for monetary damages in its own courts—an immunity that derives from the federal Constitution. *See Alden v. Maine*, 527 U.S. 706, 732-33 (1999) ("Although the sovereign immunity of the States derives at least in part from the common-law tradition, the structure and history of the Constitution make clear that the immunity exists today by constitutional design."); *Cockrell v. Bd. of Regents of N.M. State Univ.*, 2002-NMSC-009, ¶¶ 4-8, 132 N.M. 156, 45 P.3d 876 (discussing *Alden* at length). New Mexico's immunity to suit for damages is a fundamental aspect of its sovereignty and is held by virtue of its "admission into the Union upon an equal footing with the other States." *Alden*, 527 U.S. at 713.

**{16}** Because New Mexico's sovereign immunity is grounded in the federal Constitution, it exists only where the states' sovereign immunity was not relinquished either "by the plan of the Convention or certain constitutional Amendments." *Id.*; *see also* The Federalist No. 81 (Hamilton) ("It is inherent in the nature of sovereignty not to be amenable to the suit of an individual *without its consent*. . . . Unless, therefore, there is a surrender of this immunity in the plan of the convention, it will remain with the States . . . .") (emphasis added). For example, "[i]n ratifying the Constitution, the States consented to suits brought by other States or by the Federal Government." *Alden*, 527 U.S. at 754 (citing *Principality of Monaco v. State of Miss.*, 292 U.S. 313, 328-29 (1934) (collecting cases)).

**{17}** In *Alden*, the Supreme Court addressed the issue of state sovereignty at the Constitutional Convention and specifically examined whether any provision of Article I grants Congress the power to subject nonconsenting states to private suits for damages in their own courts. *See* 527 U.S. at 730-31. The Supreme Court determined that Congress only has such a power "if there is 'compelling evidence' that the States were required to surrender this power to Congress pursuant to the constitutional design." *Id.* at 730-31 (quoting *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 781 (1991)). After analyzing the "history, practice, precedent, and the structure of the Constitution," the Supreme Court held that "the States retain immunity from private suit in their own courts, an immunity beyond the congressional power to abrogate by Article I legislation." *Id.* at 754.

**{18}** In *Central Virginia Community College v. Katz*, 546 U.S. 356 (2006), the Supreme Court retreated from the broad holdings of *Seminole Tribe* and *Alden* that nothing in Article I empowers Congress to subject a state to suit by a private party for monetary relief without its consent. *Katz* concluded after looking to the history of the Bankruptcy Clause, U.S. Const. art I, § 8, cl. 4, and bankruptcy legislation considered and enacted in the wake of the Constitution's ratification that the Bankruptcy Clause enables Congress to abrogate state

7

sovereign immunity in bankruptcy proceedings. *See* 546 U.S. at 377 ("The ineluctable conclusion, then, is that States agreed in the plan of the Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to 'Laws on the subject of Bankruptcies.'" (quoting U.S. Const. art I, § 8, cl. 4)). *Katz*, therefore, applied the framework articulated in *Alden* to conclude that Congress's power under the Bankruptcy Clause includes a limited power to abrogate state sovereign immunity. *See id.* In so doing, *Katz* opened the door to arguments that constitutional history and structure show that Congress, by acting pursuant to other Article I powers, may subject the states to private suits absent their consent.

**{19}** Encouraged by the Supreme Court's holding in *Katz*, Ramirez, the New Mexico Office of the Attorney General (as an intervenor), and the United States (as an amicus curiae) argue that Congress's War Powers include the power to subject states to private suits for monetary relief without their consent. They maintain that this putative power sounds in the plan of the Convention.

**{20}** We decline to decide whether, pursuant to the constitutional structure outlined at the Convention and ratified thereafter, the states implicitly consented to Congress's authority under its War Powers to override their sovereign immunity. The resolution of that constitutional question is unnecessary to the disposition of this case; therefore, we do not address it. *See Allen v. LeMaster*, 2012-NMSC-001, ¶ 28, 267 P.3d 806 ("It is an enduring principle of constitutional jurisprudence that courts will avoid deciding constitutional questions unless required to do so." (internal quotation marks and citation omitted)). Instead, we address whether the New Mexico Legislature waived New Mexico's sovereign immunity to private suits seeking monetary relief for a state employer's alleged violation of a right guaranteed by USERRA.

### 3.    Determining waiver of state sovereign immunity

**{21}** New Mexico's privilege to assert its sovereign immunity in its own courts "does not confer upon the State a concomitant right to disregard the Constitution or valid federal law." *Alden*, 527 U.S. at 754-55. Sovereign immunity does not bar all judicial review of state compliance with federal law in New Mexico courts. For instance, a private individual may bring a federal cause of action seeking prospective, injunctive relief against a state officer. *See Gill v. Pub. Emps. Ret. Bd. of Pub. Emps. Ret. Ass'n of N.M.*, 2004-NMSC-016, ¶¶ 1, 28, 135 N.M. 472, 90 P.3d 491 (applying the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), to private suits against state officials).

**{22}** Furthermore, the Legislature may consent to suits against the State. *See Cockrell*, 2002-NMSC-009, ¶ 13 ("[I]t is within the sole province of the Legislature to waive the State's constitutional sovereign immunity."). "The rigors of sovereign immunity are thus 'mitigated by a sense of justice which has continually expanded by consent the suability of the sovereign.'" *Alden*, 527 U.S. at 755 (quoting *Great N. Life Ins. Co. v. Read*, 322 U.S. 47, 53 (1944)). The Legislature may waive New Mexico's sovereign immunity with respect to

8

causes of action that it creates. *See, e.g.*, NMSA 1978, § 14-2-12 (1993) (providing for enforcement, including the award of monetary damages, for a claim arising under the Inspection of Public Records Act); NMSA 1978, § 28-1-13(D) (2005) (providing for the State's monetary liability for injury to a person under the Human Rights Act). The Legislature may also waive New Mexico's immunity to federal causes of action that Congress creates through the exercise of its Article I powers. *See Cockrell*, 2002-NMSC-009, ¶ 13.

{23}     This case turns on whether the Legislature waived the State's immunity to suit by enacting Section 20-4-7.1(B), which applies the rights created by USERRA to qualifying members of the New Mexico National Guard. *Cockrell* guides the resolution of this question. In *Cockrell*, this Court stated "that any waiver of the State's constitutional sovereign immunity must be clear and unambiguous." 2002-NMSC-009, ¶ 24. There, we specifically considered whether NMSA 1978, Section 37-1-23(A) (1976) waived the State's sovereign immunity in actions for overtime wages asserted under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219 (2012). *Cockrell*, 2002-NMSC-009, ¶¶ 16-24. Section 37-1-23(A) grants immunity to governmental entities "from actions based on contract, except actions based on a valid written contract." This Court concluded that this statute did not clearly and unambiguously indicate the Legislature's intent to make state entities amenable to suits asserting FLSA claims in state courts. *Cockrell*, 2002-NMSC-009, ¶ 24. We accordingly held that "Section 37-1-23 does not waive the State's constitutional sovereign immunity." *Cockrell*, 2002-NMSC-009, ¶ 22.

{24}     We first look to the text of a statute to determine whether the Legislature's waiver of immunity is clear and unambiguous. For example, in *Cockrell* we first addressed whether the text of Section 37-1-23(A) indicated an express waiver of immunity. 2002-NMSC-009, ¶ 18. This Court determined that an FLSA claim, which is purely statutory, is not "based on a valid written contract" within the meaning of Section 37-1-23(A), even where there is a valid contract for employment incorporating the protections of the FLSA. *Cockrell*, 2002-NMSC-009, ¶ 18. Accordingly, this Court concluded that "Section 37-1-23 does not provide an express waiver of immunity for . . . FLSA claim[s]." *Cockrell*, 2002-NMSC-009, ¶ 18.

{25}     With respect to a textual indication of waiver, we clarify that the Legislature is not required to employ certain magic words or a specific formulaic recital to express its intention to consent to suit in state court. In *Luboyeski v. Hill*, for example, this Court concluded that the State waived its immunity to private suits brought to enforce the New Mexico Human Rights Act under its provision that "'the state shall be liable the same as a private person.'" 1994-NMSC-032, ¶ 14, 117 N.M. 380, 872 P.2d 353 (quoting Section 28-1-13(D) (1987)). Other jurisdictions have also declined to adopt a magic-words test to discern a waiver of state sovereign immunity. *See, e.g.*, *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003) ("[W]e do not insist that the statute [waiving sovereign immunity] be a model of perfect clarity." (internal quotation marks and citation omitted)); *Klonis v. State, Dep't of Revenue*, 766 So. 2d 1186, 1189 (Fla. Dist. Ct. App. 2000) ("Although a waiver of sovereign immunity by a legislative enactment must be clear, specific, and unequivocal, no

particular magic words are required."). Like these courts, we do not favor any particular language by which the Legislature may render the State amenable to suit in its own courts.

**{26}** This Court may also discern a clear and unambiguous waiver by examining the purpose of a statute. The clear and unambiguous standard does not confine our statutory analysis to the text alone. For example, in *Cockrell*, after considering whether Section 37-1-23(A) expressly waived immunity, this Court addressed whether the statute "implicitly evidence[d] a legislative intent to waive immunity from FLSA claims." 2002-NMSC-009, ¶ 19. *Cockrell* "recognized that the purpose of the legislative enactment containing Section 37-1-23 was to reinstate the sovereign immunity which had been abolished by *Hicks v. State*, subject to certain exceptions." *Cockrell*, 2002-NMSC-009, ¶ 22 (internal quotation marks and citation omitted). This Court determined that the purpose of the limited waiver of immunity expressed in Section 37-1-23(A) was to encourage parties who contract with state entities to do so in writing in order to ensure clear terms and to verify that the "governmental entity is authorized to enter into [the] contract." *Cockrell*, 2002-NMSC-009, ¶ 22 (alteration in original) (internal quotation marks and citation omitted). *Cockrell* concluded that the purposes of Section 37-1-23(A) did not support making state entities amenable to suit in state courts for alleged violations of the FLSA. *See Cockrell*, 2002-NMSC-009, ¶¶ 21-22.

**{27}** We clarify that the method that this Court employs to determine whether the Legislature waived New Mexico's immunity to suit in its own courts is not the method employed by the federal courts to discern a waiver of state sovereign immunity to suit in federal court. While the federal courts may hesitate to look beyond the statutory text to discern a state's consent to suit in the federal courts, *see, e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 673 (1973), in *Cockrell*, this Court appropriately examined both the text and the purpose of a statute to determine the Legislature's intent to consent to suit in its own court. 2002-NMSC-009, ¶¶ 21-22. The federal courts' determination of waivers of sovereign immunity to suit in federal court is guided by federalism concerns that do not bear upon this Court's determination of the Legislature's consent to suit in the courts of New Mexico. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984) ("A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued. . . . [B]ecause of the problems of federalism inherent in making one sovereign appear against its will in the courts of the other, a restriction upon the exercise of the federal judicial power has long been considered to be appropriate. . . ." (internal quotation marks and citation omitted)). Unlike the federal courts, when this Court interprets a statute to determine the Legislature's intent to waive sovereign immunity, we are concerned with the State's amenability to suit in *its own* courts. Thus, as in *Cockrell*, this Court will examine both statutory text and purpose to determine whether the Legislature clearly intended to waive the State's sovereign immunity to a federal cause of action in its own courts.

**{28}** We also make clear that any determination by this Court that the Legislature consented to suit in its own courts does not also mean that the Legislature consented to suit in the federal courts. *See Pennhurst*, 465 U.S. at 100 n.9 (noting that the United States

Supreme Court "consistently has held that a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts"); *Great N. Life Ins.*, 322 U.S. at 54 ("[I]t is not consonant with our dual system for the Federal courts . . . to read the consent to embrace Federal as well as state courts.").

**4.      New Mexico waived sovereign immunity to USERRA claims**

**{29}**      Ramirez contends that by enacting Section 20-4-7.1(B), the Legislature waived state sovereign immunity to his USERRA action. We agree. Section 20-4-7.1(B) provides as follows: "The rights, benefits and protections of the federal Uniformed Services Employment and Reemployment Rights Act of 1994 shall apply to a member of the national guard ordered to federal or state active duty for a period of thirty or more consecutive days." The Legislature enacted this provision in 2004, with knowledge of *Alden*'s holding that "the powers delegated to Congress under Article I . . . do not include the power to subject nonconsenting States to private suits for damages in state courts." *See Alden*, 527 U.S. at 712; 2004 N.M. Laws, ch. 37 § 1 (codified at § 20-4-7.1(B)). *See also Inc. Cty. of Los Alamos v. Johnson*, 1989-NMSC-045, ¶ 4, 108 N.M. 633, 776 P.2d 1252 (presuming that the legislature is well informed as to existing law).

**{30}**      Under Section 20-4-7.1(B), the Legislature provided that members of the New Mexico National Guard who are ordered to active duty for at least thirty consecutive days will benefit from every applicable right that USERRA creates. Two of these rights are pertinent here. First, USERRA guarantees members of a uniformed service the right not to be denied "any benefit of employment by an employer on the basis" of their membership in a uniformed service. 38 U.S.C. § 4311(a). Second, USERRA creates a private right of action for damages against a state employer to remedy violations of USERRA's substantive antidiscrimination protections. *See* 38 U.S.C. §§ 4323(a)(3), (d)(1)(B)-(C), 4311(a).

**{31}**      Section 20-4-7.1(B) guarantees both the substantive antidiscrimination right and the right of action against a state employer to members of the national guard ordered to federal or state active duty for a period of thirty or more consecutive days. Section 20-4-7.1(B) adopts the rights guaranteed by USERRA without limitation. The statutory provision contains no suggestion that it only extends *some* of the rights created by USERRA. *See* § 20-4-7.1(B). It does not suggest that the Legislature intended to extend USERRA's substantive antidiscrimination right to members of the New Mexico National Guard but to withhold USERRA's right to a remedy for damages. *See id.* We therefore have no reason to construe the statute as not conferring USERRA's right of action against state employers to national guard members.

**{32}**       Other relevant statutes counsel against such a construction, and we read statutes in pari materia to ascertain legislative intent. *See State v. Davis*, 2003-NMSC-022, ¶ 12, 134 N.M. 172, 74 P.3d 1064. The Legislature has made clear that "[t]he intent of the New Mexico Military Code and all laws and regulations of the state affecting the military forces is to reasonably conform to all laws and regulations of the United States affecting the same

11

subjects, except as otherwise expressly provided with respect to military justice." NMSA 1978, § 20-1-2 (1987). Furthermore, it has long been the policy of New Mexico to provide a private right of action for damages against the State as an employer for the failure to reemploy a qualifying service member who returns to state employment from active duty. *See* NMSA 1978, Section 28-15-3 (1941, amended 1971) (creating a private right of action to enforce the substantive rights created by NMSA 1978, Section 28-15-1 (1941)). To be sure, Sections 28-15-1 and 28-15-3 would not provide Ramirez with a remedy because those provisions guard against a state employer's failure to reemploy a qualifying service member and Ramirez was reemployed by CYFD. Ramirez complained of separate adverse employment actions, including termination, taken by CYFD because of his military service. Nevertheless, the Legislature's creation of a private right of action for qualifying service members to recover from the discrimination of not being reemployed because of their uniformed service strongly supports that, by enacting Section 20-4-7.1(B), the Legislature intended to create a right of action for qualifying service members to recover from other forms of employment discrimination. Thus, in light of both the Legislature's longstanding willingness to confer a private right of action against state employers on service members who return from active duty and suffer the employment discrimination of not being reemployed because of their military service (as indicated by Section 28-15-3) and the Legislature's intent that New Mexico law conform to federal law with respect to the military forces (as expressed by Section 20-1-2), it is clear that Section 20-4-7.1(B) confers on members of the New Mexico National Guard who are ordered to federal or state active duty for a period of thirty or more consecutive days a private right of action for damages against the State to remedy a violation of USERRA's substantive antidiscrimination rights.

{33}   Other courts, when confronted with the same issue, have interpreted statutes similar to Section 20-4-7.1(B) and Section 20-1-2 to indicate a legislative intent to waive immunity to private USERRA actions. *See Scocos v. State Dep't of Veteran Affairs*, 819 N.W.2d 360, 366-67 (Wis. Ct. App. 2012) (holding that a statute providing that the discharge from federal active duty of persons restored to state employment is subject to all federal laws affecting any private employment was sufficient to authorize the plaintiff's claims against the state under USERRA); *Panarello v. State*, 2009 WL 3328484, at *4 (R.I. Super. Jan. 22, 2009) ("This Court will not reach the constitutional question raised above because it is clear that the [Wisconsin Legislature] waived the State's sovereign immunity by necessary implication when it incorporated USERRA, without qualification, within its general laws.").

{34}   When the Legislature creates a right of action for damages against the State it thereby makes the State liable to suit. *See Luboyeski*, 1994-NMSC-032, ¶ 14 (holding that the Human Rights Act's provisions permitting plaintiffs to obtain damages and attorney's fees from the State waived the State's sovereign immunity created by the Tort Claims Act). When enacting Section 20-4-7.1(B), the Legislature furnished qualifying members of the New Mexico National Guard a right of action against state employers for money damages if they are denied any benefit of employment by a state employer on the basis of their membership in the national guard or their service to this State and the United States. Therefore, we conclude that the Legislature consented to private USERRA suits for damages against state

employers.

**{35}** Our analysis differs from the reasoning of the Court of Appeals. The Court of Appeals first determined that the War Powers Clause does not grant Congress the power to subject nonconsenting states to private suits for damages in their own courts. *Ramirez*, 2014-NMCA-057, ¶¶ 17-18. The Court of Appeals then reasoned that Sections 20-1-2 and 20-4-7.1(B), which serve to confer the rights created by USERRA on qualifying members of the New Mexico National Guard, cannot have extended USERRA's jurisdictional provision that a private right of action may be brought in a state court. Accordingly, the Court of Appeals concluded that neither Section 20-1-2 nor Section 20-4-7.1(B) waived New Mexico's sovereign immunity to private USERRA actions seeking monetary damages. *Ramirez*, 2014-NMCA-057, ¶ 25.

**{36}** Unlike the Court of Appeals, we do not decide whether the War Powers Clause grants Congress the power to abrogate state sovereign immunity. Whether USERRA's jurisdictional provision that enforcement actions "may be brought in a State court" is *ultra vires*, and, consequently, whether the Legislature could have validly extended that jurisdictional provision, are issues inapposite to the proper resolution of this case. 38 U.S.C. § 4323(b)(2). New Mexico's district courts are courts of general jurisdiction. *Trujillo v. State*, 1968-NMSC-179, ¶ 3, 79 N.M. 618, 447 P.2d 279. Their power to adjudicate claims is grounded in the New Mexico Constitution, not in a federal statute. N.M. Const., art. VI, § 13.

**{37}** In the light of the text and purpose of Section 20-4-7.1(B), the Legislature clearly conferred USERRA's antidiscrimination rights on qualifying members of the New Mexico National Guard and extended USERRA's private right of action for damages against state employers that violate those antidiscrimination rights. In so doing, the Legislature waived New Mexico's immunity to suit.

## III.    CONCLUSION

**{38}** For the foregoing reasons, we reverse the decision of the Court of Appeals and reinstate the district court's judgment and damage award.

**{39}    IT IS SO ORDERED.**

_____
**JUDITH K. NAKAMURA, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

13

_____
**PETRA JIMENEZ MAES, Justice**


_____
**EDWARD L. CHÁVEZ, Justice**


_____
**BARBARA J. VIGIL, Justice**