# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2021-NMSC-005**

**Filing Date:  October 19, 2020**

**No. S-1-SC-37692**

**GREGORY A. NASH and SUSIE K. NASH,**

       Plaintiffs-Petitioners,

v.

**GROUP I: BOARD OF COUNTY
COMMISSIONERS
OF CATRON COUNTY, NEW
MEXICO, a political subdivision
of the State of New Mexico, and
ELENA GELLERT,**

and

**GROUP II: ALL UNKNOWN
CLAIMANTS OF INTEREST
IN THE PREMISES ADVERSE
TO THE PLAINTIFFS,**

       Defendants-Respondents.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Shannon Murdock, District Judge**

And

**No. S-1-SC-37778**

**BELEN CONSOLIDATED
SCHOOL DISTRICT,**

       Plaintiff-Petitioner,

v.

**THE COUNTY OF VALENCIA,**

Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**James Lawrence Sanchez, District Judge**

Released for Publication March 2, 2021.

Turner Law Firm, LLC
Scott E. Turner
Albuquerque, NM

for Plaintiffs-Petitioners Gregory A Nash and Susie K. Nash

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Arthur D. Melendres
Zachary L. McCormick
Albuquerque, NM

for Plaintiff-Petitioner Belen Consolidated School District

Nance, Pato & Stout, LLC
Adren Robert Nance
David Matthew Pato
Socorro, NM

for Defendants-Respondents Board of County Commissioners of the County of Catron
and Board of County Commissioners of the County of Valencia

**OPINION**

**THOMSON, Justice**

**{1}** In a consolidated opinion, the Court of Appeals determined that New Mexico counties generally have statutory immunity from suits to quiet title and held that "there is no [applicable] statutory exception" to that immunity. *Belen Consol. Sch. Dist. v. Cnty. of Valencia*, 2019-NMCA-044, ¶ 1, 447 P.3d 1154 (consolidating *Belen Consol. Sch. Dist. v. Cnty. of Valencia*, A-1-CA-35474, and *Nash v. Bd. of Cnty. Comm'rs of Catron Cnty.*, A-1-CA-37081). The parties who were plaintiffs in the two district court cases separately petitioned this Court to issue its writ of certiorari. We granted both petitions pursuant to NMSA 1978, Section 34-5-14 (1972), and Rule 12-502 NMRA. The parties in both cases participated in an oral argument before this Court. We now address whether statutory immunity protects counties from being named in quiet title actions or whether a valid waiver to that immunity exists. We exercise our discretionary authority under Rule 12-317(B) NMRA to issue a consolidated opinion, and we affirm the Court of Appeals.

**I.      BACKGROUND**

**{2}** The issue addressed in this opinion arises from the evolution, abolition, and resurrection of governmental immunity in New Mexico. In 1958, this Court recognized that common law sovereign immunity protects the state and its political subdivisions from being named in an action to quiet title "to extinguish the state's fee simple title in the property." *Maes v. Old Lincoln Cnty. Mem'l Comm'n*, 1958-NMSC-115, ¶¶ 9-12, 64 N.M. 475, 330 P.2d 556. The *Maes* Court's holding was based on its construction of the limited waiver of common law sovereign immunity that the Legislature enacted in 1947, which is now codified as NMSA 1978, § 42-6-12 (1947).[1] The *Maes* Court construed Section 42-6-12 to waive common law sovereign immunity "for the limited purpose of aiding a mortgagee who discovers that the State has acquired an interest in the mortgaged property and [who] is unable to pass a marketable title to the purchaser at a foreclosure sale unless the state can be joined in the foreclosure suit." *See* 1958-NMSC-115, ¶ 10.

**{3}** The judicially-created doctrine of common law sovereign immunity that the *Maes* Court applied in actions to quiet title existed until 1978, when this Court explicitly acknowledged the abolition of the doctrine's application in New Mexico. *Brosseau v. N.M. State Highway Dep't*, 1978-NMSC-098, ¶¶ 10-12, 92 N.M. 328, 587 P.2d 1339. Despite the abolition of the doctrine of common law sovereign immunity, the limited waiver of immunity now codified as Section 42-6-12 was not repealed, nor was *Maes* overruled.

**{4}** In the following year, the Legislature statutorily resurrected governmental immunity in actions concerning real property. *See* 1979 N.M. Laws, ch. 110, § 1 (codified as NMSA 1978, § 42-11-1 (1979)). That enactment prohibited naming the State as "a defendant in any suit, action, case or legal proceeding involving a claim of title to or interest in real property except as specifically authorized by law." *Id.*

**{5}** Regardless of the *Brosseau* Court's abolition of common law sovereign immunity and the Legislature's imposition of statutory governmental immunity, Section 42-6-12 was not repealed or amended. Although application of sovereign immunity can produce inequitable results, we will not judicially repeal an immunity that the Legislature lawfully created unless such immunity violates the United States or the New Mexico Constitution.

**{6}** With this context in mind, we turn to the factual and procedural background for each case, which we present separately.

## A. The Valencia County Case

---

[1]NMSA 1978, Section 42-6-12 (1947), was formerly compiled as NMSA 1941, Section 25-1312 (1947), NMSA 1953, § 22-14-12 (1947), and finally as Section 42-6-12. *See Belen*, 2019-NMCA-044, ¶ 2 n.1. The statute remains unchanged since its enactment in 1947. *Compare* 1947 N.M. Laws, ch. 150, § 1, *with* § 42-6-12. We refer to the statute using the contemporary compilation citation except where analyzing the enacting legislation's title as it pertains to the construction of the statute by this Court in *Maes*, 1958-NMSC-115, ¶¶ 9-10.

**{7}** Belen Consolidated School District (Belen) decided to sell real property, in which it holds the title, in order to "fund school activities" and initiated an action to quiet title in order to obtain marketable title. Belen initiated a quiet title action to remove the cloud on the title to the property and named the Board of County Commissioners of Valencia County (Valencia) along with other persons, governmental entities, and nongovernmental entities as defendants. In its complaint, Belen described the property and alleged that Valencia "claimed an interest in the property and sought conveyance of the property to [Valencia]" in 2010.

**{8}** Instead of answering and asserting it had superior title to the property, Valencia moved the district court to dismiss the complaint. Although it avoided directly claiming any title to the subject property, Valencia's motion asserted an interest in the property.

> Notwithstanding [Belen's] vague reference to [Valencia] County's interest, the County has for decades and continues to maintain the real property as a park and sports facility for the benefit of the youth of the County. The County has continuously expended funds and man-hours to provide for improvements, fencing and maintenance. [Valencia] desires that the real property continue to be utilized as a park for the County's youth.[2]

Regardless of who claims or has superior title, Valencia argued that Section 42-11-1 prohibited naming Valencia as a defendant in an action to quiet title because it was a political subdivision of the State.[3]

**{9}** Belen responded that Section 42-6-12 waives statutory immunity created by Section 42-11-1. Belen argued that because *Brosseau* abolished common law sovereign immunity, the limited waiver established by Section 42-6-12 should be broadened to permit quiet title suits against the State and its political subdivisions. Belen also requested that, if the district court was inclined to dismiss its claim based on immunity, Belen be allowed to amend its complaint to "assert a claim for inverse condemnation."

**{10}** At the hearing on its motion to dismiss, Valencia argued that Section 42-11-1 granted Valencia broad immunity and that the limited waiver of immunity in Section 42-6-12 did not apply in this case. Valencia also argued that allowing Belen to amend the complaint to assert a claim for inverse condemnation would be futile because Belen was now barred from bringing any claim by the three-year statute of limitations. *See* NMSA

---

2Valencia also moved for dismissal based on an argument that Belen's complaint did not state Valencia's claim of interest "with sufficient factual detail to give [Valencia] reasonable notice of the basis of the claim." The Court of Appeals did not address this argument, and Valencia did not pursue this argument before this Court, and so we consider the argument abandoned. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (observing that this Court has discretion to decline to address arguments that are not fully briefed and supported on appeal).

3Belen's complaint describes the property in question as "Tracts 38-A-1-B and 40-A-1, as shown on Map 114 of the Surveys of the Middle Rio Grande Conservancy District." We observe that although the property is classified as tax-exempt, according to online records of the Valencia County Assessor, the property's taxable value is assessed, with Belen shown as owner of the property.

1978, § 42A-1-31(B) (1981) (establishing a three-year statute of limitations "from the date of the taking or damaging"). Regardless of whether it had title to the property, Valencia's position was that it has the right to use the property without initiating a condemnation action and without providing compensation. This position clearly frustrated the district court. As a result, in denying Valencia's motion to dismiss, the district court colorfully, but perhaps not entirely inaccurately, opined that Valencia's position amounted to "tyranny[,] for the government to say we're the government, you have no rights and you can't even challenge us in court."[4]

**{11}** Valencia petitioned the Court of Appeals for a Writ of Error pursuant to Rule 12-503 NMRA. The Court of Appeals reversed the district court, determined that the governmental immunity created by Section 42-11-1 barred quieting title against Valencia and that there was no applicable statutory waiver, and remanded the Valencia case "for entry of an order dismissing the action against Valencia." *Belen*, 2019-NMCA-044, ¶¶ 1, 14. Belen petitioned this Court for certiorari.

## B.    The Catron County Case

**{12}** Gregory A. Nash and Susie K. Nash (collectively "Nash") filed a complaint to quiet title to real property and named the Board of County Commissioners of Catron County (Catron) as one of a number of defendants, who "may claim an [adverse] interest in the Property." The complaint alleged that Catron "may claim an interest in the Property pursuant to that certain Warranty Deed recorded in the Office of the County Clerk for Catron County, on October 9, 1968, in Book #2, at Page 52," and that Catron "may not agree with the location of the boundary line" between their respective properties. In response, Catron filed a motion to dismiss "pursuant to Rule 1-012 NMRA" based on the immunity created by Section 42-11-1 and stated, "Notwithstanding [Nash's] vague reference to [Catron's] interest, [Catron] has for decades and continues to maintain the real property as part of its courthouse complex."[5]

**{13}** Catron acknowledged that this Court abolished the practice of applying the common law doctrine of sovereign immunity in actions to quiet title. Nevertheless, like Valencia, Catron argued that Section 42-11-1 reestablished a broad grant of governmental immunity in response to the *Brosseau* Court's abolition of common law

---

4We observe that other governments have recognized the benefit of permitting an action to quiet title against the government. In England, although the common law recognized the doctrine of sovereign immunity, the sovereign was nonetheless subject to the "petition of right" which permitted quieting title against the sovereign. *See United States v. Lee*, 106 U.S. 196, 205, 208 (1882) (discussing the use of the petition of right as a means to resolve a subject's claim against the crown to quiet title). Further, the federal government recognized the benefit of resolving claims of title to real property that have been clouded when one of the claimants is the federal government by enacting the federal Quiet Title Act. *See* 28 U.S.C. § 2409a(a) (1986) ("The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights.").

5Catron also initially argued that dismissal was proper because the complaint was not properly served. However, prior to the hearing on the motion to dismiss, Catron withdrew improper service as a basis for dismissal of the complaint.

sovereign immunity. Catron consequently concluded that Section 42-11-1 prohibited naming it as a defendant in this case.

**{14}** Nash responded, as Belen had, that following *Brosseau*, Section 42-6-12 should be construed as a broad waiver of immunity that permits quieting title against Catron. Nash argued alternatively that even if Section 42-6-12 remains as a limited waiver of immunity, due process prohibits applying immunity to bar naming Catron as a defendant in this action to quiet title.

**{15}** Catron responded to Nash's due process argument by asserting that constitutional due process was satisfied because Nash had a remedy: "inverse condemnation." Catron argued that inverse condemnation was Nash's exclusive remedy to satisfy due process, regardless of whether Nash failed to exercise that exclusive remedy within the three-year statute of limitations.

**{16}** The district court stated that it believed that Section 42-6-12 and Section 42-11-1 were "in conflict," but granted Catron's motion to dismiss, reluctantly observing that although it was "disturbing sometimes to think that the county can just come in and take somebody's property . . . it sounds like there are other remedies . . . that could have happened in this case." The Court of Appeals affirmed the district court. *Belen*, 2019-NMCA-044, ¶¶ 1, 14. Nash petitioned this Court for certiorari.

## II.   ANALYSIS

**{17}** "The well-being of every community requires that the title to real estate therein shall be secure, and that there be convenient and certain methods of determining any unsettled questions respecting it." *Arndt v. Griggs*, 134 U.S. 316, 321 (1890). Under general principles of sovereignty, "'[t]he power of the state to regulate the tenure of real property within her limits, and the modes of its acquisition and transfer, and the rules of its descent, and the extent to which a testamentary disposition of it may be exercised by its owners, is undoubted.'" *Id.* at 321 (quoting *United States v. Fox*, 94 U.S. 315, 320 (1876)).

**{18}** The parties' arguments on appeal are substantially similar to those presented to the respective district courts. Valencia and Catron argue that the State lawfully exercised its power to regulate property when it enacted Section 42-11-1 in response to the *Brosseau* Court's abolition of the judicially created doctrine of sovereign immunity. Belen and Nash argue that this Court should apply *Brosseau* to broadly construe Section 42-6-12 to allow a plaintiff to quiet title against the State and its political subdivisions because the public interest requires "that such clouds be removed in order that land be put to its full potential use." *Brosseau*, 1978-NMSC-098, ¶ 11. Belen and Nash alternatively argue that, if Section 42-6-12 does not constitute a waiver of governmental immunity in actions to quiet title, Section 42-11-1 violates due process insofar as it allows Valencia and Catron to avoid the quiet title action. *See Brosseau*, 1978-NMSC-098, ¶ 12 (opining that "sovereign immunity may not be interposed to bar quiet title actions if its effect is to deny one a remedy for the taking of his property without compensation").

**{19}** Although it appears that title to the respective properties may have been clouded by Valencia and Catron, unless the immunity created by statute violates the constitution, the Legislature has lawfully acted within its power to regulate the tenure of property within New Mexico. Regarding Nash's and Belen's constitutional argument, neither party fully developed a constitutional claim. We therefore decline to address their due process argument in this opinion.

## A.      Standard of Review

**{20}** "We review de novo a district court's order granting or denying a motion to dismiss under Rule 1-012(B)(6) NMRA" for the failure to state a legally viable claim. *State Engineer of N.M. v. Diamond K Bar Ranch, LLC*, 2016-NMSC-036, ¶ 12, 385 P.3d 626. Whether the Legislature waived governmental immunity is an issue of statutory construction that we also review de novo. *Ramirez v. N.M. Children, Youth & Families Dep't*, 2016-NMSC-016, ¶ 13, 372 P.3d 497.

## B.      The Legislature Lawfully Imposed Statutory Governmental Immunity in Actions to Quiet Title

**{21}** "In *Hicks v. State*, 1975-NMSC-056, ¶ 9, 88 N.M. 588, 544 P.2d 1153, *superseded by statute as recognized by Upton v. Clovis Mun. Sch. Dist.*, 2006-NMSC-040, ¶ 8, 140 N.M. 205, 141 P.3d 1259, this Court abolished the common law doctrine of sovereign immunity. As the counties acknowledge, "In New Mexico . . . common-law sovereign immunity—as opposed to statutory immunity—has been repealed for over 30 years since this Court's landmark decision in *Hicks*. . . . [N]o one should doubt the broader scope of what this Court has previously described as *Hicks*'s sweeping abolition of sovereign immunity." *State ex rel. Hanosh v. State ex rel. King*, 2009-NMSC-047, ¶ 10, 147 N.M. 87, 217 P.3d 100 (internal quotation marks and citation omitted).

**{22}** Even though *Hicks* abolished the doctrine of sovereign immunity in all respects, the *Brosseau* Court explicitly acknowledged the abolition as it pertained to actions to quiet title. The *Brosseau* Court observed that "the doctrine of sovereign immunity was an out-moded, archaic doctrine" and that "[t]here are presently in New Mexico no conditions or circumstances which could rationally support the doctrine of sovereign immunity." 1978-NMSC-098, ¶¶ 10-11 (internal quotation marks and citation omitted).

**{23}** That said, "[t]he common law now recognizes a constitutionally valid statutory imposition of sovereign immunity, and such immunity must be honored by the courts where the legislature has so mandated." *Torrance Cnty. Mental Health Program, Inc. v. N.M. Health & Env't Dep't*, 1992-NMSC-026, ¶ 16, 113 N.M. 593, 830 P.2d 145 (internal quotation marks and citation omitted). Within limits, it is clear that the Legislature may statutorily impose sovereign immunity, so this Court must resolve whether the scope of the immunity created by Section 42-11-1 and the waiver of immunity established by Section 42-6-12 permit the present actions to quiet title against the counties.

1. **The Legislature reacted to the abolition of common law sovereign immunity and imposed a broad grant of statutory immunity**

**{24}** Less than three months after the holding of *Brosseau* was announced, the Legislature in its next session enacted a new law entitled: "RELATING TO GOVERNMENTAL IMMUNITY; GRANTING IMMUNITY FROM CERTAIN SUITS, ACTIONS, CASES OR LEGAL PROCEEDINGS INVOLVING REAL PROPERTY; PROVIDING EXCEPTIONS." *See* 1979 N.M. Laws, ch. 110, § 1. This law was codified under Article VI ("Quieting Title") as Section 42-11-1 ("Granting immunity; providing for exceptions"). We presume that the enactment of Chapter 110, Section 1 of New Mexico Laws of 1979 was a reaction to *Brosseau*. *See State v. Chavez*, 2008-NMSC-001, ¶ 21, 143 N.M. 205, 174 P.3d 988 ("This Court presumes that the Legislature is aware of existing case law and acts with knowledge of it.").

**{25}** It is clear from the language of the statute that the Legislature intended to grant broad immunity to the State and its political subdivisions.

> The state of New Mexico and its political subdivisions or any of their branches, agencies, departments, boards, commissions, instrumentalities or institutions are granted immunity from and may not be named a defendant in *any* suit, action, case or legal proceeding involving a claim of title to or interest in real property *except as specifically authorized by law*.

Section 42-11-1 (emphasis added).

**{26}** We observe that by including the term "any" the Legislature enacted a broad grant of immunity. We also observe that by including the phrase "except as specifically authorized by law" the Legislature recognized that the waiver in Section 42-6-12, which was not repealed, now applies to the immunity created by Section 42-11-1. *See Noice v. BNSF Ry. Co.*, 2016-NMSC-032, ¶ 13, 383 P.3d 761 ("[T]he only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable. Repeals by implication are rare and should be found only if necessary to make the later-enacted law work, and even then only to the minimum extent necessary." (internal quotation marks and citation omitted)); *see also N.M. Bldg. & Constr. Trades Council v. Dean*, 2015-NMSC-023, ¶ 15, 353 P.3d 1212 (observing that this Court "operate[s] from a working assumption that the Legislature . . . is well informed about the law"(omission in original)).

**{27}** The parties agree that Section 42-6-12 is the only relevant waiver of immunity. *See Belen*, 2019-NMCA-044, ¶¶ 10-12. The parties, however, disagree about the scope of that waiver.

2. **The Legislature intended Section 42-6-12 to be a limited waiver**

**{28}** As previously stated, since 1958 this Court has recognized that the scope of the Section 42-6-12 waiver is limited to "aiding a mortgagee who discovers that the State has acquired an interest in the mortgaged property and [who] is unable to pass a

marketable title to the purchaser at a foreclosure sale." *Maes*, 1958-NMSC-115, ¶ 10. Belen and Nash urge this Court to revisit the *Maes* Court's construction in light of *Brosseau*. We do so and decline to overrule the *Maes* Court's interpretation of Section 42-6-12. Although this construction may produce an inequitable result, expanding the scope of the waiver would contravene the legislative intent of Section 42-11-1 and Section 42-6-12.

**{29}** "Our ultimate goal in statutory construction is to ascertain and give effect to the intent of the Legislature. It is the high duty and responsibility of the judicial branch of government to facilitate and promote the legislature's accomplishment of its purpose." *State v. Smith*, 2004-NMSC-032, ¶ 8, 136 N.M. 372, 98 P.2d 1022 (internal quotation marks and citations omitted). This Court "begin[s] by looking at the language of the statute itself." *Id.* ¶ 9. However, when necessary to determine the intent of the Legislature, "we also consider the history and background of the statute." *Id.* ¶ 10 (internal quotation marks and citation omitted).

**{30}** Section 42-6-12 provides,

> Upon the conditions herein prescribed for the protection of the state of New Mexico, the consent of the state is given to be named a party in any suit which is now pending or which may hereafter be brought in any court of competent jurisdiction of the state to quiet title to or for the foreclosure of a mortgage or other lien upon real estate or personal property, for the purpose of securing an adjudication touching any mortgage or other lien the state may have or claim on the premises or personal property involved.

Reviewing the plain language, we cannot say that it manifests a clear, singular construction. Depending on how a reader interprets the arrangement of the words, Section 42-6-12 could be construed to be (1) a broad waiver of immunity for the purpose of ascertaining title *and* the purpose of adjudicating foreclosure of a mortgage or other lien or (2) a narrow waiver of immunity "for the limited purpose of aiding a mortgagee who discovers that the State has acquired an interest in the mortgaged property and [who] is unable to pass a marketable title to the purchaser at a foreclosure sale." *See Maes*, 1958-NMSC-115, ¶ 10 (construing Section 42-6-12 to be a narrow waiver of immunity). Nash and Belen argue for the first construction. Valencia and Catron argue for the second construction. Regardless of the argument, the plain language does not unquestionably evince the Legislature's intent. We must therefore also consider the history and background of the statute.

**{31}** When the statute was compiled under Article VI ("Quieting Title"), the compiler added a heading to Section 42-6-12 that states, "Consent of state in quiet title and foreclosure suits," which could be read to suggest that the Legislature waived statutory immunity in two types of suits: actions to quiet title and foreclosure actions. However, we have previously stated that "[a]ny editorial comment or headnote by the compiler of a compilation statute is not part of the law." *Miller v. Doe*, 1962-NMSC-113, ¶ 5, 70 N.M. 432, 374 P.2d 305. Because an editorial comment or headnote by the compiler is

created in the process of compilation and was not created by the Legislature, it is of little to no use in determining legislative intent. *See id.*[6] However, a full title of the 1947 enrolled and engrossed bill was drafted and enacted by the Legislature. Therefore, this Court will consider this enacted title when construing the Legislature's intent in enacting the 1947 statute. *See State ex rel. State Corp. Comm'n v. Old Abe Co.*, 1939-NMSC-046, ¶ 27, 43 N.M. 367, 94 P.2d 105 ("We take it that the title is quite properly to be considered a part of an act, particularly where it is a constitutional requirement that every act have a title, as is true in this state."); *see also Harriett v. Lusk*, 1958-NMSC-006, ¶ 15, 63 N.M. 383, 320 P.2d 738 ("The preamble may be used to clarify an act and aid in its interpretation. *The title may also be utilized as an aid in determining the intention of the legislature and to resolve doubts as to meanings.*" (emphasis added) (citation omitted)). "The subject of every bill shall be clearly expressed in its title, and no bill embracing more than one subject shall be passed except general appropriation bills and bills for the codification or revision of the laws[.]" N.M. Const. art. IV, § 16. ("[B]ut if any subject is embraced in any act which is not expressed in its title, only so much of the act as is not so expressed shall be void.").

{32}    The enrolled and engrossed bill, Chapter 150 of New Mexico Laws of 1947, was titled,

> AN ACT GIVING THE CONSENT OF THE STATE OF NEW MEXICO TO BE SUED RESPECTING THE ADJUDICATION OR FORECLOSURE OF ANY LIEN AGAINST REAL OR PERSONAL PROPERTY AGAINST WHICH THE STATE HOLDS OR CLAIMS A LIEN; PROVIDING THE PROCEDURE THEREFOR AND THE NATURE OF THE RELIEF THAT MAY BE GRANTED.

This title clarifies the legislative intent to create a limited waiver of immunity, which is to say consent of the state to be named in a lawsuit where the state holds or claims a lien against real or personal property and where that lien is being adjudicated or foreclosed.

{33}    The full title of the enrolled and engrossed bill was included as an annotation when the law was originally codified in Volume 2 of the 1951 supplement to the 1941 compilation of the New Mexico Statutes Annotated. *See* NMSA 1941, § 25-1312 (1947). That annotation was likewise included without alteration or amendment when the statute was recompiled. *See* NMSA 1953, § 22-14-12 (1947). Although the *Maes* Court did not directly comment on the title of the enrolled and engrossed bill, it specifically determined that the statute did not include actions "to extinguish the state's fee-simple title." *See* 1958-NMSC-115, ¶¶ 9-10, 12 (ordering the district court to dismiss the complaint

---

6The Legislature subsequently adopted the Uniform Statute and Rule Construction Act, NMSA 1978, §§ 12-2A-1 to -20 (1997), which generally applies to statutes and rules enacted after the date of the uniform act. *See* § 12-2A-1(B). Although the Uniform Statute and Rule Construction Act does not apply in this instance because Section 42-6-12 was enacted before adoption of this uniform act, we note that the Legislature agreed with the common law canon of construction stated in *Miller* and specifically chose to codify it. *See* NMSA 1978, § 12-2A-13 (1997) ("Headings and titles may not be used in construing a statute or rule unless they are contained in the enrolled and engrossed bill or rule as adopted.").

seeking to quiet title because "[w]e find no omnibus legislative consent to bring suit against the State to quiet title").

{34}    Although *Brosseau* specifically acknowledged the abolition of common law sovereign immunity as applied to actions to quiet title, *Brosseau* did not alter the Legislature's intent for Section 42-6-12 to create a limited waiver of immunity. *See* 1978-NMSC-098, ¶¶ 6, 10-11. When the Legislature enacted Section 42-11-1 to effectively establish statutory immunity, it did so aware of the limited waiver it had previously granted. *See Chavez*, 2008-NMSC-001, ¶ 21 (observing that this Court presumes the Legislature is aware of "existing [statutory and] case law and acts with knowledge of it"). Section 42-11-1 and Section 42-6-12 are not in conflict, and the *Maes* Court's construction of Section 42-6-12 remains good law. This Court must honor the Legislature's imposition of statutory immunity. *See Torrance Cnty. Mental Health Program, Inc.*, 1992-NMSC-026, ¶ 16.

## C.    We Decline to Address the Undeveloped Constitutional Argument

{35}    A state "has control over property within its limits; the condition of ownership of real estate therein . . . is subject[] . . . to obligations, private or public, and the modes of establishing titles thereto." *Arndt*, 134 U.S. at 320-21. "[T]here can be no legal right . . . against the authority that makes the law on which that right depends." *Kawananakoa v. Polyblank*, 205 U.S. 349, 353 (1907). Even so, the Fifth Amendment to the United States Constitution and Article II, Section 20 of the New Mexico Constitution prohibit the government from taking property "for public use "without just compensation." And both the Fourteenth Amendment to the United States Constitution and Article II, Section 18 of the New Mexico Constitution provide that no person shall be deprived "'of life, liberty or property without due process of law.'" *Bounds v. State ex rel. D'Antonio*, 2013-NMSC-037, ¶ 50, 306 P.3d 457.

{36}    Belen and Nash independently assert that their due process rights have been violated if neither can assert a claim to quiet title against the respective county. Both procedural and substantive concerns can arise in a due process claim. *Bounds*, 2013-NMSC-037, ¶ 50. "Procedural due process requires the government to give notice and an opportunity to be heard before depriving an individual of liberty or property." *Id.* (internal quotation marks and citation omitted). "Substantive due process cases inquire whether a statute or government action shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Id.* (internal quotation marks and citation omitted). However, "[t]he threshold question in evaluating a due process challenge is *whether there is a deprivation of liberty or property*." *Id.* ¶ 51 (alteration in original) (emphasis added) (internal quotation marks and citation omitted). Neither Nash nor Belen established an actual deprivation of property.

{37}    Assuming that Nash's or Belen's property was "taken or injured," neither appears to have timely asserted a claim for inverse condemnation, which is the proper and exclusive remedy. *See Mesich v. Bd. of Cnty. Comm'rs of McKinley Cnty.*, 1942-NMSC-054, ¶ 15, 46 N.M. 412, 129 P.2d 974 (observing that "'owner' as used in statutes providing for eminent domain proceedings includes all persons who have an interest or

estate in the property taken or injured" (citation omitted)); *Townsend v. State ex rel. State Highway Dep't*, 1994-NMSC-014, ¶¶ 6-9, 117 N.M. 302, 871 P.2d 958 (recognizing "that inverse condemnation is an exclusive remedy to recover damages when property is taken for public use . . . without paying just compensation" and identifying "the applicable statute of limitations" to bar some of the claims for inverse condemnation).

{38}    Belen advanced two additional reasons why this Court should consider its undeveloped due process argument. Belen contended that it might be unable to assert an inverse condemnation claim against Valencia because (1) Belen's property, as public land, might not be subject to constitutional protection from takings and (2) Belen may not be a "person" authorized to bring a claim under the Eminent Domain Code, NMSA 1978, §§ 42A-1-1 to -34 (1981, as amended through 2001). We are not convinced and note that *United States v. 50 Acres of Land*, 469 U.S. 24, 31 (1984), holds that the "most reasonable" construction of the "reference to 'private property' in the Takings Clause of the Fifth Amendment . . . encompass[es] the property of state and local governments . . . ." In so holding, the United States Supreme Court observed that "the loss to the public entity, to the persons served by it, and to the local taxpayers may be no less acute than the loss in a taking of private property." *Id.* In addition, the Eminent Domain Code clearly states that *person* "includes . . . *governmental entity*," which is "the state or local public body," and *local public body* is "a political subdivision of the state." NMSA 1978, § 42A-1-2(E), (G), (H) (defining the terms *governmental entity*, *local public body*, and *person*).

{39}    Although we observe that in England, the origin of our common law, the "petition of right" was used as "a practical and efficient remedy for the invasion by the sovereign power of individual rights," we do not adjudge the wisdom of the Legislature's choice to create governmental immunity from being named a defendant in actions to quiet title. *See Lee*, 106 U.S. at 205, 208 (internal quotation marks and citation omitted) ("In all cases where the title to property came into controversy between the crown and a subject, . . . the petition of right presented a judicial remedy . . . ."); *see also State ex rel. Taylor v. Johnson*, 1998-NMSC-015, ¶ 21, 125 N.M. 343, 961 P.2d 768 ("It is the particular domain of the legislature, as the voice of the people, to make public policy." (brackets omitted) (internal quotation marks and citation omitted)); *State ex rel. Clark v. Johnson*, 1995-NMSC-048, ¶ 20, 120 N.M. 562, 904 P.2d 11 ("[I]t is not within the province of this Court to evaluate the wisdom of an act of either the legislature or the Governor."); *cf. GandyDancer, LLC v. Rock House CGM, LLC*, 2019-NMSC-021, ¶ 23, 453 P.3d 434 (acknowledging that this Court "should refrain from creating policy").

{40}    We decline to exercise our discretionary authority under Rule 12-321(B) NMRA to reach the constitutional argument, because neither Belen nor Nash presents an appropriately developed case—one where sovereign immunity, interposed to bar quiet title actions, has denied the plaintiff a remedy for the taking of property without compensation.

## III.    CONCLUSION

**{41}** Based on the foregoing, we affirm the Court of Appeals.

**{42}** **IT IS SO ORDERED.**

**DAVID K. THOMSON, Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Chief Justice**

**BARBARA J. VIGIL, Justice**

**C. SHANNON BACON, Justice**