2008-NMSC-001

174 P.3d 988

**STATE of New Mexico, Plaintiff–
Appellant,**

v.

**Elias CHAVEZ, Defendant–Appellee.**

No. 30,567.

Supreme Court of New Mexico.

Dec. 3, 2007.

Gary K. King, Attorney General, James W. Grayson, Assistant Attorney General, Santa Fe, NM, for Appellant.

John Bigelow, Chief Public Defender, J.K. Theodosia Johnson, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

**OPINION**

SERNA, Justice.

{1} Elias Chavez (Defendant) was indicted on various charges. The question of his competency to stand trial was raised, and he was found incompetent by stipulation of the parties. He was ordered committed to State custody for treatment to competency. Approximately nine months later, the State moved to criminally commit Defendant for the period of time equal to the maximum sentence for the offenses with which he is charged. Pursuant to statute, the district court held a hearing to redetermine Defendant's competency to stand trial. The district court eventually entered an order finding that Defendant was competent by a preponderance of the evidence standard but not by a clear and convincing evidence standard. The district court noted uncertainty with respect to the state of the law regarding the requisite standard of proof for a redetermination of competency because the pertinent case law had been decided under predecessor provisions to the current statute governing competency proceedings, the New Mexico Mental Illness and Competency Code ("NMMIC"), NMSA 1978, §§ 31–9–1 to –1.5 (1988, as amended through 1999). The district court found Defendant incompetent to stand trial and suggested immediate interlocutory appeal to answer this "controlling question of law as to which there is substantial ground for difference of opinion." The State appealed.

{2} For the reasons that follow, we reaffirm the continued viability, under the NMMIC, of the longstanding rule, established by our case law, that upon a redetermination of competency, the State must prove the defendant's competency by a preponderance of the evidence. Accordingly, we

reverse the district court and remand for proceedings in accordance with this Opinion.

## I. FACTS AND COURSE OF PROCEEDINGS

{3} On April 9, 2003, Defendant was indicted by the Grand Jury of Valencia County on two open counts of murder, alternatively charged as felony murder; attempted first degree murder; aggravated stalking; two counts of child abuse; and tampering with evidence. On January 28, 2004, defense counsel filed a motion to determine Defendant's competency. On February 18, 2004, by stipulation of the parties, the district court entered an order finding that Defendant was not presently competent to stand trial and that he was dangerous, as defined in Section 31–9–1.2(D), for purposes of treatment to competency. Accordingly, Defendant was committed to the forensic division of the Las Vegas Medical Center ("LVMC") for treatment to attain competency to stand trial, not to exceed nine months. The court further required the LVMC to report on Defendant's amenability and progress toward competency. *See* § 31–9–1.2. In addition, the court ordered a hearing to review Defendant's competency within ninety days of entry of the order, known as a Section 1.3 hearing, which the defendant may waive. *See* § 31–9–1.3.

{4} On June 30, 2004, approximately four and one-half months after Defendant was committed to the LVMC, he entered a motion to waive the Section 1.3 hearing, based on the LVMC's determination that he was still incompetent. Defendant's motion noted that, pursuant to Section 31–9–1.3(D), he could remain committed to the LVMC for up to nine months from the original determination of incompetency to continue treatment to competency. The court granted Defendant's motion to vacate the Section 1.3 hearing, noting that a hearing would be set, pursuant to Section 31–9–1.5, upon receipt of the final, nine-month report from the LVMC.

{5} On December 14, 2004, the State entered a motion to criminally commit Defendant for the period of time equal to the maximum sentence for the offenses with which he is charged. *See* § 31–9–1.5. In order to criminally commit a defendant, Section 31–9–1.5 requires the State to prove by clear and convincing evidence that the defendant committed the crimes charged. The court held an evidentiary hearing, pursuant to Section 31–9–1.5, on April 14, 2005, for the purpose of determining Defendant's competency to stand trial. The court heard testimony from a forensic neuropsychologist, a clinical psychologist, a clinical neurologist, and an LVMC contract employee, who evaluated Defendant's competency as part of her employment at the LVMC. Based on the evidence presented during the hearing and the court's observations of Defendant during the hearing, the court found Defendant competent by a preponderance of the evidence, observing that it could not make this finding under a clear and convincing evidence standard.

{6} On May 26, 2005, Defendant filed a motion to reconsider the district court's finding of competency, arguing that the State must prove by clear and convincing evidence that Defendant is competent to stand trial. Defendant argued that the clear and convincing standard is required by *State v. Rotherham*, 122 N.M. 246, 923 P.2d 1131 (1996). On August 9, 2005, the State filed an opposition to Defendant's motion and filed proposed findings of fact and conclusions of law. The State contended in part that *State v. Santillanes*, 91 N.M. 721, 580 P.2d 489 (Ct.App. 1978), forecloses Defendant's argument regarding the standard of proof because therein the Court of Appeals "expressly rejected the argument that the State should be held to any higher burden of proof." Moreover, the State contended that *Rotherham* is inapplicable to the instant case, as it dealt with "the constitutionality of that portion of Sec. 31–9–1.5 which pertains to lifelong commitment to a mental institution" and "did not . . . address the burden of proof for finding competency, rather . . . the burden of proof for committing a defendant after finding that he could not be treated to competency."

{7} The court held a hearing on the motion on November 28, 2005, during which defense counsel "agreed that the evidence supports the finding, by a preponderance of the evidence, that the defendant is competent to

stand trial, but argue[d] that, after a defendant has been found incompetent, a clear and convincing standard applies to the re-determination of competency." The court affirmed its factual finding that "by a preponderance of the evidence, . . . the defendant is now competent to stand trial, but the evidence of competency is not clear and convincing." The court then reconsidered its earlier determination of the proper standard of proof and stated, "*Santillanes* . . . held that, once the court has made a finding of incompetence, the standard of proof for finding that defendant has been treated to competence is a preponderance of the evidence." The court noted Defendant's argument "that the legislature repealed and reenacted the statutes pertaining to competency and criminal commitment in 1988 and that *Santillanes* was decided prior to the enactment of the current [NMMIC]." The court further stated that "*Rotherham* . . . which was decided subsequently to the statutory revisions, held that a clear and convincing standard applies to proceedings for criminal commitment after a finding that the defendant cannot be treated to competency." The court went on to state that "[t]here has been no decision following the 1988 revisions to [the NMMIC], which squarely addresses the standard which the court is to apply in finding that the defendant has been treated to competency." Noting that "[t]he standard in finding that the defendant has been treated to competency involves a controlling question of law as to which there is substantial ground for difference of opinion," the court ordered that "the Defendant is hereby found to be incompetent to stand trial, and that [a]n immediate appea[l] from this Order will materially advance the termination of this case."

{8} The Court of Appeals granted the State's application for interlocutory appeal and assigned the case to the general calendar. The case was transferred to this Court from the Court of Appeals pursuant to *State v. Smallwood*, in which we held that this Court has exclusive jurisdiction over interlocutory appeals in a criminal case "where a sentence of life imprisonment or death *could be* imposed." 2007–NMSC–005, ¶ 10, 141 N.M. 178, 152 P.3d 821. We granted the application for interlocutory appeal on July 31, 2007.

## II. DISCUSSION

{9} The sole issue before us is the proper standard of proof for a redetermination of competency, following a prior determination that a defendant is incompetent to stand trial. This is a question of law, involving interpretation of the New Mexico Mental Illness and Competency Code, §§ 31–9–1 to –1.5, which we review de novo. *State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995).

{10} The NMMIC is the statutory framework which presently governs competency and commitment proceedings in New Mexico. However, prior to the NMMIC, similar, but much less detailed, statutory provisions were in place, under which the pertinent case law was decided. To wit, in 1967, the Legislature enacted a new statute, NMSA 1953, § 41–13–3.1 (1967), providing for the determination and redetermination of competency. 1967 N.M. Laws, ch. 231, § 2. In 1972, Section 41–13–3.1 was amended. 1972 N.M. Laws, ch. 71, § 15. Section 41–13–3.1 was renumbered to Section 31–9–1 in the 1978 recompilation, but remained materially consistent until 1988, when it was repealed. 1988 N.M. Laws, ch. 108, § 1. It read as follows:

Whenever it appears, by motion or upon the courts own motion, at any stage of a criminal proceeding that there is a question as to the mental competency of a defendant to stand trial, any further proceeding in the cause shall be suspended until the court, without a jury, determines this issue. If the question is raised in a court other than the district court, the proceeding shall be suspended and the cause transferred to the district court. When the determination is made that a defendant does not have mental capacity to stand trial, the court shall further determine whether the defendant should be committed in accordance with the provisions of law governing proceedings for the involuntary hospitalization of the mentally ill. Defendants so committed shall be treated as other patients committed invol-

untarily except that they may not be released from custody without an order of the court. Defendants determined to be incompetent under this section shall have the question of their mental capacity to stand trial redetermined by the court whenever the medical authorities of the institution to which the defendant was committed or any medical authority appointed by the court, report to the court that, in their opinion, the defendant is mentally competent to stand trial.

NMSA 1978, § 31–9–1 (1967, as amended through 1972) (repealed 1988 N.M. Laws, ch. 108, § 1).[1]

{11} As the plain language reveals, the Legislature did not address or define the appropriate standard of proof for the initial determination of competency or for the redetermination of competency, the issue we confront herein. However, our case law, decided under these provisions, has established clear rules for both situations. With respect to the initial determination of competency, it is well established that the defendant in a criminal case bears the initial burden of proving his or her incompetence by a preponderance of the evidence standard. *State v. Chapman,* 104 N.M. 324, 327, 721 P.2d 392, 395 (1986); *State v. Armstrong,* 82 N.M. 358, 359, 482 P.2d 61, 62 (1971) (citing *State v. Garcia,* 80 N.M. 466, 457 P.2d 985 (1969)); *State v. Ortega,* 77 N.M. 7, 19, 419 P.2d 219, 228 (1966) (citing *In re Smith,* 25 N.M. 48, 176 P. 819 (1918)); *State v. Sena,* 92 N.M. 676, 679, 594 P.2d 336, 339 (Ct.App.1979). It has also been long held that, once there is a finding of incompetence, the burden shifts to the State on the redetermination of competency "to overcome a presumption of incompetency by *a preponderance of the evidence.*" *State v. Chapman,* 101 N.M. 478, 479, 684 P.2d 1143, 1144 (1984) [hereinafter *Chapman I*] (citing *Santillanes,* 91 N.M. 721, 580 P.2d 489) (emphasis added); *see also State v. Baca,* 95 N.M. 205, 206, 619 P.2d 1249, 1250 (Ct.App.1980) (agreeing "that the quantum of proof required in redetermining competency is 'preponderance of the evidence' ") (citing *Santillanes,* 91 N.M. 721, 580 P.2d 489).

{12} The Court of Appeals set forth this rule in the 1978 case of *State v. Santillanes,* addressing the same issue we confront in the instant case, however under the predecessor to the NMMIC. 91 N.M. at 723, 580 P.2d at 491. The Court of Appeals framed the issue as whether the redetermination of competency puts the State to a higher burden of proof than the initial burden on the defendant to prove incompetency. *Id.* The Court answered in the negative, stating, "The proof required for incompetency has consistently been held to be proof by a preponderance of the evidence. This same quantum of proof applies to a redetermination of competency." *Id.* (internal citations omitted). We addressed the issue in 1984 in *Chapman I,* wherein we cited *Santillanes* approvingly, in stating that "[t]he competency of an accused must be proven by *a preponderance of the evidence* rather than beyond a reasonable doubt." 101 N.M. at 479, 684 P.2d at 1144 (emphasis added).

{13} Despite these long-established rules, the district court in the instant case was uncertain of the appropriate standard of

---

1. The original 1967 version of Section 41–13–3.1 *is not materially different from the amended* 1972 version; however, we include the text herein for ease of comparison:

Whenever it appears, by motion or upon the court's own motion, at any stage of a criminal proceeding that there is a question as to the mental competency of a defendant to stand trial, any further proceeding in the cause shall be suspended until the court, without a jury, determines this issue. If the question is raised in a court other than the district court, the proceeding shall be suspended and the cause transferred to the district court. When the determination is made that a defendant does not have mental capacity to stand trial, the court shall commit him to the New Mexico state hospital until such time as the court finds him to have mental capacity to stand trial. Defendants committed under this section shall be treated as other patients committed involuntarily to the New Mexico state hospital except that they may not be released from custody without an order of the court. Defendants committed under this section shall have the question of their mental capacity to stand trial redetermined by the court whenever the medical authorities of the New Mexico state hospital or any medical authority appointed by the court, report to the court that, in their opinion, the defendant ... [is] mentally competent to stand trial.

NMSA 1953, § 41–13–3.1 (1967) (repealed 1988 N.M. Laws, ch. 108, § 1).

proof to be applied to the redetermination of Defendant's competency because, as it stated, "[t]here has been no decision following the 1988 revisions to [the NMMIC], which squarely addresses the standard which the court is to apply in finding that the defendant has been treated to competency." Defendant relied in the district court on *State v. Rotherham*, 122 N.M. 246, 923 P.2d 1131, for his contention that, upon the redetermination of competency, the State must prove his competency by clear and convincing evidence. The district court also relied on *Rotherham* in its determination that Defendant was incompetent to stand trial because his competency could not be established by clear and convincing evidence. However, due to its uncertainty regarding the appropriate standard, the district court suggested immediate interlocutory review on the issue.

{14} We conclude that *Rotherham* is inapposite to our resolution of the issue presented in the instant case and that *Santillanes* and *Chapman I* foreclose Defendant's argument. *Rotherham* addressed not the standard of proof for determination or redetermination of competency, but rather the constitutionality of the NMMIC, which we upheld. 122 N.M. at 249, 923 P.2d at 1134. Defendant and the district court seized upon our discussion in *Rotherham* regarding the appellants' argument "that a defendant's right to procedural due process is violated because criminal commitment under Section 31–9–1.5 requires only clear and convincing evidence rather than proof beyond a reasonable doubt." *Id.* at 261, 923 P.2d at 1146. However, we agree with the State that *Rotherham* did not address the determination or redetermination of competency and "cannot be interpreted as modifying or altering the standard of proof established in *Chapman [I], Santillanes*, and *Baca* for a redetermination of competency and in even more numerous cases for an initial competency determination." In *Rotherham*, our discussion of the procedural due process issue centered solely upon the standard of proof for the commission of the crime charged for purposes of criminal commitment. *Id.* at 261–63, 923 P.2d at 1146–48. We ultimately upheld the clear and convincing evidence standard for the criminal com-mitment determination, concluding that it "strikes a fair balance" in the limited context of Section 31–9–1.5. *Id.* at 263, 923 P.2d at 1148. The issues in *Rotherham* did not implicate, nor did we make any reference to, the well-established standard of proof for the determination or redetermination of competency. Accordingly, *Rotherham* did not affect those rules, and the district court erred in applying a clear and convincing standard in the instant case.

■ {15} Although the district court was correct that the issue has not been squarely addressed since enactment of the NMMIC, the case law decided under the predecessor provisions remains good law because the NMMIC is consistent with its predecessors in that it neither addresses nor defines the appropriate standard of proof for the determination or redetermination of competency. Thus, enactment of the NMMIC did not affect, much less abrogate, the pertinent case law. This is so because the Legislature had a specific purpose in enacting the NMMIC. *See* 1988 N.M. Laws, ch. 108, § 1. And our goal in interpreting and applying statutes is to determine and effectuate the Legislature's intent, the plain language of the statute guiding our analysis. *V.P. Clarence Co. v. Colgate*, 115 N.M. 471, 473, 853 P.2d 722, 724 (1993). Indeed, as we noted in *Rotherham*, the Legislature enacted the NMMIC in response to *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), in which the United States Supreme Court held that "indefinite commitment of a person, for reasons based solely on his incompetence to stand trial, violates the Fourteenth Amendment guarantee of due process and equal protection." *Rotherham*, 122 N.M. at 252–53, 923 P.2d at 1137–38 (citing *Jackson*, 406 U.S. at 731, 92 S.Ct. 1845). Thus, the Supreme Court concluded, " '[w]ithout a finding of dangerousness, one committed ... can be held only for a "reasonable period of time" necessary to determine whether there is a substantial chance of his attaining the capacity to stand trial in the foreseeable future.' " *Id.* at 253, 923 P.2d at 1138 (quoting *Jackson*, 406 U.S. at 733, 92 S.Ct. 1845). Accordingly, the Legislature "revised [New Mexico's] statutes governing the *confinement and treat-*

*ment of persons found to be incompetent* to stand trial." *Id.* (emphasis added). The Legislature remained silent on the appropriate standards of proof for determination or redetermination of competency, which we have already concluded were not at issue in *Rotherham.*

{16} Comparing the NMMIC with its predecessor provisions, it is evident that the guiding tenets of the predecessor provisions continue to create the foundation for the NMMIC. However, in order to avoid the constitutional infirmities identified by the United States Supreme Court in the Indiana law challenged in *Jackson,* the Legislature fleshed out and filled in concrete procedures and timelines to the skeletal framework it originally established in 1967 and which remained in effect through enactment of the NMMIC in 1988.

{17} The first of those tenets, reflected in the first two sentences of the predecessor provisions, is that upon raising the issue of the defendant's competency, criminal proceedings are suspended until the issue is determined, and the cause is transferred to district court, if the issue is raised in a different court. Section 31–9–1 of the NMMIC virtually mirrors the predecessor provisions in that regard. The NMMIC then adds that a psychologist or psychiatrist must professionally evaluate the defendant's competency, and the district court must hold a hearing on the issue. Section 31–9–1.1.

{18} The second tenet, reflected in the third and fourth sentences of the predecessor provisions, regards situations in which a defendant is determined to be incompetent and whether he or she should be committed for treatment to competency. Section 31–9–1.2 of the NMMIC fills in the details. If the court determines that the defendant is not competent, it must then determine whether or not he or she is dangerous, as defined by statute. If, as in the instant case, the court finds that the defendant is dangerous, "the district court may commit the defendant as provided in this section for treatment to attain competency to proceed in a criminal case." Section 31–9–1.2(B). Like its predecessors, Section 31–9–1.2(B)(2) provides that

once committed, the defendant cannot be released without a court order.

{19} The final tenet, reflected in the fifth sentence of the predecessor provisions, provides for the redetermination of a defendant's competency, following an initial determination of incompetency which results in the defendant's commitment. In enacting the NMMIC, the Legislature provided a series of detailed procedures and timelines to flesh out this tenet, presumably because the predecessor provisions could have been read to allow for indefinite confinement based solely on a defendant's incompetence to stand trial, the very constitutional infirmity the United States Supreme Court identified in *Jackson. See Rotherham,* 122 N.M. at 252–53, 923 P.2d at 1137–38 (citing *Jackson,* 406 U.S. at 731, 92 S.Ct. 1845). Thus, the NMMIC provides that within ninety days of entering an order to commit an incompetent defendant to treatment, the district court, without a jury, must conduct a hearing to determine whether the defendant is competent to proceed and, if not, whether the defendant is making progress toward attaining competency, and whether the defendant remains dangerous as defined by statute. Section 31–9–1.3(A). If the district court finds that the defendant is competent, the case is set for trial, although the defendant may continue to receive treatment, if necessary. Section 31–9–1.3(C). On the other hand, "[i]f the district court finds that the defendant is still not competent to proceed in a criminal case but that he is making progress toward attaining competency, the district court may continue or modify its original treatment order," subject to review no later than nine months from the original determination of incompetency. Section 31–9–1.3(D). The defendant may waive this hearing. Section 31–9–1.3(A).

{20} Furthering the purpose of avoiding the problems identified in *Jackson,* the NMMIC also provides for situations in which a defendant does not attain competency. *See* §§ 31–9–1.3(E), 31–9–1.4, 31–9–1.5. In such cases, the court may criminally commit the defendant, pursuant to Sections 31–9–1.4(A) and 31–9–1.5; release the defendant and dismiss the charges with prejudice, pursuant to

Section 31–9–1.4(B); or dismiss the charges without prejudice for the purpose of civil commitment, pursuant to Section 31–9–1.4(C). Section 31–9–1.5 sets forth detailed procedures for criminal commitment. The district court must hold a hearing, without a jury, to determine the sufficiency of the evidence against the defendant with respect to each of the crimes charged, if they are felonies involving *inter alia* the infliction of great bodily harm or the use of a firearm. Section 31–9–1.5(A). The State and the defendant may introduce evidence relevant to the question of the defendant's guilt, *id.*, and the court must find clear and convincing evidence that the defendant committed such a felony, Section 31–9–1.5(B), (D). If the court finds by clear and convincing evidence that the defendant committed such a felony and that the defendant remains incompetent and dangerous, the defendant remains detained by the Department of Health in a secured, locked facility, until he attains competency or is no longer dangerous, or the maximum sentence to which he would have been subject had he been convicted expires. Section 31–9–1.5(D). Once committed, the district court must monitor the defendant, conducting a hearing on the issues of the defendant's competency and dangerousness at least every two years. Section 31–9–1.5(D)(4).

{21} Our comparison of the NMMIC to its predecessor provisions demonstrates that the NMMIC did not effect a complete sea change with regard to competency proceedings and policy and, indeed, made no changes with respect to the standards of proof applicable to the determination or redetermination of competency. In fact, the NMMIC assigns a standard of proof, clear and convincing evidence, *only* for the issue of whether the defendant committed a crime for purposes of a criminal commitment. *See* § 31–9–1.5. The Legislature's continuing silence on the issue we confront herein is further evidence that it was both aware of and approved of the existing case law which long ago established the appropriate standards of proof for the initial determination as well as the redetermination of competency—*a preponderance of the evidence.* This Court presumes that the Legislature is aware of existing case law and acts

with knowledge of it. *See Sims v. Sims,* 1996–NMSC–078, ¶ 24, 122 N.M. 618, 930 P.2d 153 ("[W]e presume the legislature was well informed about the existing common law before the statute was enacted and did not intend to enact a statute that conflicted with the common law."); *Citation Bingo, Ltd. v. Otten,* 1996–NMSC–003, ¶ 21, 121 N.M. 205, 910 P.2d 281 ("[W]e presume that the legislature was aware of existing statutory and common law and did not intend to enact a law inconsistent with existing law."). If the Legislature had intended to modify or clarify those rules, it would have done so expressly, as it did in assigning the clear and convincing evidence standard to criminal commitment proceedings. In the absence of such legislative expression, this Court will not presume it. *See Sims,* 1996–NMSC–078, ¶ 22, 122 N.M. 618, 930 P.2d 153 ("[N]o innovation upon the common law that is not clearly expressed by the legislature will be presumed."). Therefore, the rule remains that the defendant initially bears the burden of proving by a preponderance of the evidence that he is incompetent to stand trial, whereupon the burden shifts to the State to prove by the same standard, *a preponderance of the evidence,* that the defendant is competent to stand trial.

{22} Having concluded that the issue herein appealed can be resolved on the basis of existing precedent, we decline to address Defendant's due process argument, which we find unavailing, other than to agree with the State that "[b]ecause New Mexico provides greater protection to defendants by imposing the burden of proof on the State, it is without question that New Mexico's procedure is consistent with the Fourteenth Amendment."

## III. CONCLUSION

{23} Based on the foregoing analysis, we reaffirm the longstanding rule, established by our case law, that a criminal defendant initially bears the burden of proving by a preponderance of the evidence that he or she is incompetent to stand trial, whereupon the burden shifts to the State to prove by the same standard, *a preponderance of the evi-*

*dence,* that the defendant is competent to stand trial. Accordingly, we reverse the district court's finding that Defendant is not competent to stand trial because the court did not apply the appropriate standard of proof in determining Defendant's competency to stand trial. We, therefore, remand for proceedings in accordance with this Opinion.

{24} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PETRA JIMENEZ MAES, RICHARD C. BOSSON, Justices, and RICHARD E. RANSOM (Pro Tem).