This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v. **NO. 34,300**

**MICHELLE MAURICIO**,

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TORRANCE COUNTY**
**Kevin R. Sweazea, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Kenneth H. Stalter, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Sergio Viscoli, Appellate Defender
David Henderson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRENCH, Judge.**

{1}     Michelle Mauricio (Defendant) pleaded no contest to one count of trafficking crack cocaine, contrary to NMSA 1978, § 30-31-20(B) (2006). The district court sentenced her to nine years imprisonment, the maximum allowable by law for a first conviction for that offense. NMSA 1978, § 31-18-15(A)(7) (2007, amended 2016). Defendant filed a motion to reconsider her sentence in which she argued that she was incompetent to have pleaded or been sentenced because of her intellectual disability. The district court denied Defendant's motion to reconsider her sentence. On appeal, Defendant argues that the district court committed reversible error because the district court: (1) misconstrued Defendant's competency evaluation (CE) report and incorrectly ruled that Defendant was competent when she pleaded and was sentenced; (2) failed to make required written findings about Defendant's competency; and (3) improperly relied for sentencing on information gleaned from Defendant when her attorney was not present. We are not persuaded by Defendant's arguments and therefore affirm the district court.

**BACKGROUND**

{2}     Defendant was charged with six crimes based upon three sales of crack cocaine to an undercover officer during May and June of 2012 for a total of $650. On February 11, 2013, Defendant pleaded no contest to one count of trafficking by possession with intent to distribute, a second degree felony. The plea and disposition

2

agreement (plea agreement) indicated that Defendant's sentence had not been determined and the discretion to sentence Defendant rested with the district court. The plea agreement also indicated that the State did not oppose a suspended sentence with supervised probation. Pursuant to the plea agreement, Defendant was required to "cooperate fully" in a debriefing interview with the drug enforcement task force. The district court accepted that Defendant understood and consented to the terms of the plea agreement, and that she entered her plea "knowingly, voluntarily, and intelligently."

{3}     Defendant was debriefed pursuant to the plea agreement. Our factual understanding of the debriefing is limited because we do not have a record of the debriefing nor a copy of the report based on the debriefing. It is not clear whether the debriefing was recorded and, by choice of Defendant's counsel, the debriefing report seems not to have been placed in the record. In any case, the debriefing appears to have been conducted by narcotics task force investigators, Defendant's probation officer, and a district attorney. Defendant's attorney was not present but Defendant verbally agreed to participate in the debriefing without representation.

{4}     At the sentencing hearing on July 29, 2013, the State again expressed that it did not oppose a suspended sentence with probation for Defendant, and recommended that sentence. Because the probation officer who attended the debriefing was no longer

3

with the probation department, the district court continued the hearing to allow the replacement probation officer an opportunity to render her own sentencing recommendation.

{5}     A second sentencing hearing was held on October 28, 2013. Counsel for Defendant explained that Defendant did not have any prior criminal history, complied with the terms of her conditions of release but for one failed drug test, did volunteer work while awaiting sentencing, and was the caregiver for some of her grandchildren. Defendant spoke briefly on her own behalf, telling the district court that she was sorry, had tried to get a job, and attempted but failed to obtain a high school equivalency degree. The State remained amenable to a suspended sentence with probation. The probation officer recommended a sentence of nine years, with two years suspended. The district court pointed out that, according to the first pre-sentence report, Defendant "conceded that she had been dealing for five or six years at least" but later, when Defendant spoke with the replacement probation officer, Defendant admitted to trafficking for only "two or three years." The district court explained that "the traffickers are the scourge of our communities. . . . selling dope into our communities to the kids there." The district court imposed a sentence of nine years of incarceration, to be followed by two years of parole.

4

{6} On November 27, 2013, a new attorney entered an appearance on behalf of Defendant and, on January 9, 2014, filed a motion requesting that the district court reconsider Defendant's sentence. Counsel made several equitable arguments, including that Defendant was primary caregiver for two of her young grandchildren and the ill health of Defendant's husband. Counsel also raised for the first time the issue of Defendant's mental state or condition. Defendant's counsel informed the district court that Defendant was "unable to remember and understand what is told to her simply and repeatedly" and that, '[u]pon information and belief, there is something biological occurring which impedes [Defendant's] ability to fully comprehend matters." In response, the State chose not to oppose the motion to reconsider Defendant's sentence.

{7} Defendant's motion to reconsider her sentence was heard on March 31, 2014. The district court ordered a diagnostic examination (DE) and continued the hearing. The DE revealed that Defendant had an IQ test score of 72, which is in the third percentile for her age group, and generally performed on intellectual skills tests at an upper elementary school level.

{8} On June 30, 2014, the district court held another hearing on the motion to reconsider the sentence, but again did not decide the merits. Because the results of the DE suggested that competency was an issue and the State raised the matter, the district

court issued a written order for an expedited CE "to determine the Defendant's competency to proceed to trial."

{9} The psychologist who performed the CE, Dr. Dusty L. Humes, initially did not understand that Defendant had already pleaded and been sentenced in this case, and accordingly, interviewed Defendant to determine whether Defendant was at that time competent to stand trial. That misunderstanding interfered with Dr. Humes' administration of the test to determine competency because Dr. Humes "was asking [Defendant] questions that were not applicable to her situation." Also, Dr. Humes "did not examine [Defendant's] understanding of a plea bargain because, at that time, it seemed clear that [Defendant] did not even know the roles of the courtroom personnel nor her rights in the justice system."

{10} Between the time Dr. Humes interviewed Defendant and drafted the CE report, Dr. Humes learned the correct posture of the case, and, in her report, acknowledged the initial misunderstanding. Dr. Humes concluded that Defendant was "currently incompetent to stand trial or enter a plea, and that this is a function of her intellectual disability." On the critical issue of whether Defendant was competent to have pleaded, Dr. Humes wrote the following:

> It was this examiner's impression that [Defendant] did not have the rudimentary knowledge necessary to be able to understand the benefits and costs of making a plea agreement. However, it was not possible to determine in this interview whether her lack of knowledge about her

6

legal situation was present at the time that she entered a plea of no contest to her pending charges. However, it seems unlikely that her level of intellectual functioning and the associated deficits would have been substantially different at an earlier time.

{11} On September 15, 2014, the district court heard the merits of Defendant's motion to reconsider her sentence. Prior to argument, the district court stated that "the [CE] report didn't opine concerning competency at the time the plea was entered, or even at the time of the previous sentencing." Counsel for Defendant argued for a different interpretation: "[W]hat I took from [the relevant part of the CE report] was she's not competent now, and based on the degree of her mental functioning, she would not have been competent, or her mental capacity would have been any different, any better, at the time she entered her plea." The State argued that the competency of Defendant was not an issue before the district court. The district court found that in the absence of "a doctor's opinion that [Defendant] was incompetent when the plea was entered," the district court was "[without] legal ground to set aside the plea." The district court explained its reasoning:

> [I]n connection with the plea; or in connection with the sentencing; I very honestly never was concerned that [Defendant] didn't know what she was doing or that she wasn't competent. I was very honestly surprised to find -- or to see the opinion most recently that was given after the sentencing that you obtained, that she is not presently competent, because up to that time, I did not have an indication that clued me in that she was not.

> [A]s I read the report, the low IQ or low intellectual functioning alone does not fall to the level that would give rise to an opinion that that alone makes one incompetent. That's the way I'm reading that report.
>
> So, it is my impression that the incompetence that is opined presently is more as a result of [Defendant's] present circumstance where she is disappointed about her sentence, and despondent about her loss of her husband, and the rest of her circumstances.
>
> . . . .
>
> So, what I look at then is what the circumstances are. [Defendant] is a drug trafficker. She admitted she was trafficking for years. That's what caused her to be investigated. So, that is the sentence that I imposed because of that, and I am not going to change it.

Noting additionally that the result would have been "remarkably different" if the CE report had stated Defendant was "incompetent from prior to the plea," the district court denied Defendant's motion to reconsider her sentence.

{12}    Defendant timely appealed.

**COMPETENCY**

{13}    An incompetent criminal defendant may not plead guilty. *Godinez v. Moran*, 509 U.S. 389, 396 (1993); *see United States v. Masthers*, 539 F.2d 721, 725 (D.C. Cir. 1976) ("It is axiomatic that an accused must be competent to enter a valid guilty plea[.]"). "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction[.]" *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *see also* James W. Ellis & Ruth A. Luckasson, *Mentally Retarded Criminal*

8

*Defendants*, 53 Geo. Wash. L. Rev. 414, 461 (1985) ("[A] guilty plea has the effect of waiving all of the defendant's constitutional rights in the adjudicative process and is the full equivalent of a conviction."). It is a violation of due process for a court to accept a guilty plea or sentence a defendant who is incompetent. *Cf. State v. Mendoza*, 1989-NMSC-032, ¶ 8, 108 N.M. 446, 774 P.2d 440 ("The law is clear that conviction of a legally incompetent accused violates due process."); *see also State v. Montoya*, 2010-NMCA-067, ¶ 23, 148 N.M. 495, 238 P.3d 369 ("The sentencing of an incompetent defendant violates due process of law." (alterations, internal quotation marks, and citation omitted)).

{14}    To meet the legal standard for competency, "a defendant must (1) understand the nature and significance of the proceedings, (2) have a factual understanding of the charges, and (3) be able to assist in his [or her] own defense." *State v. Gutierrez*, 2015-NMCA-082, ¶ 9, 355 P.3d 93. The competency requirements are the same for the entry of a plea as to stand trial. *State. v. Herrera*, 2001-NMCA-073, ¶ 31, 131 N.M. 22, 33 P.3d 22. "[T]he defendant in a criminal case bears the initial burden of proving . . . incompetence by a preponderance of the evidence standard." *State v. Chavez*, 2008-NMSC-001, ¶ 11, 143 N.M. 205, 174 P.3d 988.

{15}    Defendant contends that the district court committed reversible error when it found that Defendant did not demonstrate incompetence at the time she pleaded or

was sentenced. We review for abuse of discretion the decision of the district court that a defendant is competent to take a plea or be sentenced. *Cf. State v. Rael*, 2008-NMCA-067, ¶ 16, 144 N.M. 170, 184 P.3d 1064 (reviewing the finding for an abuse of discretion that a defendant was competent to stand trial).

{16} Defendant argues that the district court misinterpreted the CE report when it found that Defendant was incompetent at the time of the CE report but not earlier. Defendant argues that although the district court accepted the psychologist's finding that Defendant was incompetent, the district court misconstrued the reasons for Defendant's incompetence. Defendant specifically contends that the district court incorrectly grounded Defendant's incompetency in her emotional state—i.e., her "disappoint[ment] about her sentence, and desponden[ce] about her loss of her husband, and the rest of her circumstances"—more than Defendant's intellectual functioning, whereas the CE report states clearly that Defendant's incompetence was "a function of her intellectual disability." Defendant's contention, even if correct, is unavailing. Defendant's competency at the time of the CE is not at issue, regardless of the district court's justification for its finding.

{17} The issue facing this Court is whether the district court abused its discretion by finding that Defendant did not meet her burden to demonstrate that she was incompetent at the time she pleaded or was sentenced. Defendant's main argument on

that point is syllogistic: Defendant was found to be incompetent, and the reason for Defendant's incompetence—her intellectual disability—was static. Therefore, by inescapable inference, Defendant was incompetent not only when the competency evaluation was performed but also earlier. Defendant thus argues that she demonstrated her incompetence in a manner that indicated its presence by a preponderance of the evidence not just at the time of her evaluation, but by extension to the prior plea and sentencing proceedings.

{18}     Because the psychologist who performed the CE was not called to testify, we are left to analyze the language in the CE report, as was the district court. The CE report reflects the misunderstandings that existed at the time the psychologist interviewed Defendant. First, Dr. Humes was unaware when she interviewed Defendant that the relevant task was to determine Defendant's competency not in the then-present but at an earlier time. Also, Dr. Humes was mistaken about the posture of the case. In sum, her interview was not directed at the true issue: whether an incompetent defendant pleaded away her adjudicative constitutional rights or received punishment. Although Dr. Humes concluded in her report that Defendant was not competent because of Defendant's intellectual disability and that "it seem[ed] unlikely" that Defendant's "level of intellectual functioning and the associated deficits would have been substantially different at an earlier time[,]" Dr. Humes stopped short

of concluding that Defendant was incompetent at an earlier time. Instead, Dr. Humes specifically declined to draw any conclusion: "[I]t was not possible to determine in her interview whether her lack of knowledge about her legal situation was present at the time that she entered a plea of no contest to her pending charges." The explicit failure of Dr. Humes to conclude that Defendant was incompetent at any time other than the time of the CE provided the latitude for the district court to find Defendant competent at the times she pleaded and was sentenced. We therefore decline to hold that the finding of the district court was clearly untenable or contrary to logic and reason. Thus, the district court did not abuse its discretion. *See Miller v. Bank of Am., N.A.*, 2015-NMSC-022, ¶ 8, 352 P.3d 1162 ("An abuse of discretion will be found when the trial court's decision is clearly untenable or contrary to logic and reason." (internal quotation marks and citation omitted)).

{19}     Before concluding this section, we pause to take the unusual step of noting arguments not brought before this Court, but which, on the record before us, could have been made. First, Defendant did not argue ineffective assistance of counsel. Only after Defendant entered a plea, received her sentence, and changed counsel, was the district court alerted to the issue of Defendant's competence. It is considerably more difficult to address competency issues retrospectively than in the present. *See Pate v. Robinson*, 383 U.S. 375, 387 (1966) ("[W]e have previously emphasized the difficulty

12

of retrospectively determining an accused's competence."). Our holding does not forestall the possibility of collateral review based on ineffective assistance of counsel. Moreover, because of a combination of inadvertent misguidance by the district court and the psychologist's misunderstanding, the CE was directed at the then-present instead of the past. This leaves us with an as yet unasked question: Were Defendant's due process rights protected by a CE that did not squarely address Defendant's competence when she pleaded and was sentenced?

**WRITTEN FINDINGS**

{20}     Defendant argues that the district court committed reversible error because it did not make written findings that addressed the competency factors, which are required in order to make clear the evidence and reasoning relied upon by the district court. *See Gutierrez*, 2015-NMCA-082, ¶ 10 (stating that a competency hearing requires "a written statement from the fact finder clarifying the evidence relied upon and reasons for the decision" (citing *Vitek v. Jones*, 445 U.S. 480, 494–95 (1980))). Defendant is correct that no findings on this issue are in the record. However, the district court explicitly offered Defendant the opportunity "to include findings in the order [denying the motion to reconsider the sentence] so that [Defendant would] have a means to have [the decision] reviewed." Defendant apparently failed to take this opportunity, and on appeal, offers no explanation for that choice. Moreover, the

district court verbally articulated its reasoning for finding that Defendant was competent when she pleaded and was sentenced: the CE report did not conclude otherwise, and therefore, Defendant did not meet her burden. Under those circumstances, we decline to hold that the district court committed reversible error on the basis of its failure to submit written findings of facts and conclusions of law.

**DEFENDANT'S DEBRIEFING**

{21}    Defendant argues that she had an unmet right to counsel during her required debriefing with the drug task force and the district court committed reversible error by considering information obtained in the debriefing when determining Defendant's sentence. Defendant concedes that she voiced a waiver of her right to counsel at the debriefing but argues on appeal that her incompetence rendered that waiver invalid.

{22}    We agree that Defendant had a right to counsel at the debriefing. *See State v. Padilla*, 2002-NMSC-016, ¶ 11, 132 N.M. 247, 46 P.3d 1247 ("[A] criminal defendant charged with a felony has a constitutional right . . . to have the assistance of an attorney at all critical stages of a trial."); *State v. Robinson*, 1983-NMSC-040, ¶ 12, 99 N.M. 674, 662 P.2d 1341 ("[A critical] stage is reached when a defendant is faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." (internal quotation marks and citation omitted)); *United States v. Leonti*, 326 F.3d 1111, 1118 (9th Cir. 2003)

14

(stating in the context of federal law that "attempted cooperation [is] a critical stage of [a criminal] proceeding"). However, because the district court found that Defendant demonstrated incompetence only at the time of the CE, and we have upheld that finding against Defendant's challenge, Defendant's concession that she vocalized a waiver of her right to counsel at the debriefing is fatal to her argument on this point.

**CONCLUSION**

**{23}**   For the reasons stated, we affirm the district court's denial of Defendant's motion to reconsider her sentence. We reiterate that our holding does not forestall Defendant from seeking collateral review on the basis of ineffective assistance of counsel. *See State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61 (stating that an ineffective assistance of counsel claim is more properly brought through a petition for habeas corpus when a full determination would require facts not in the record).

**{24}**   **IT IS SO ORDERED**.


_____
**STEPHEN G. FRENCH, Judge**


**WE CONCUR:**


_____

**JAMES J. WECHSLER, Judge**

_____
**J. MILES HANISEE, Judge**