This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39513**

**STATE OF NEW MEXICO,**

　　　Plaintiff-Appellee,

v.

**PATRICK LADON SANDERS,**

　　　Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G.W. Shoobridge, District Court Judge**

Raúl Torrez, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Harrison, Hart & Davis, LLC
Nicholas T. Hart
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}** Defendant Patrick London Sanders was twice put on trial after he participated in a drive-by shooting that resulted in the death of a passenger in another vehicle. The first jury found Defendant guilty of being a felon in possession of a firearm, contrary to NMSA 1978, Section 30-7-16(A) (2001, amended 2022), but could not reach a verdict on the other charges, resulting in a mistrial. The second jury convicted Defendant of aggravated assault with a deadly weapon, contrary to NMSA 1978, Section 30-3-2(A) (1963); shooting at or from a motor vehicle resulting in great bodily harm, contrary to

NMSA 1978, Section 30-3-8(B) (1993); and voluntary manslaughter, contrary to NMSA 1978, Section 30-2-3(A) (1994).[1] The district court later vacated the manslaughter conviction on double jeopardy grounds.

**{2}** Defendant appeals, arguing (1) the district court erred by finding him competent to stand trial and be sentenced, contrary to his expert's testimony, and not staying further proceedings; (2) the district court erred when it denied his motion to reconsider his sentence without a hearing; (3) the district court erred by refusing to instruct the jury on involuntary manslaughter; (4) his speedy trial rights were violated; and (5) there was cumulative error warranting reversal of each of his convictions. For reasons that follow, we affirm.

## DISCUSSION

### I. Defendant's Competency

**{3}** After Defendant's second trial, but prior to sentencing, he moved for a forensic competency evaluation. The district court granted the motion. A competency hearing was held as a result, where the district court heard testimony from Defendant's expert, who opined that Defendant was not competent to stand trial, and the State's expert, who opined that Defendant was competent to stand trial. The district court concluded that Defendant was competent, based on its own observations regarding Defendant's understanding of the criminal proceedings against him and testimony from the State's expert that Defendant may be exaggerating any impairments. Defendant contends that the district court's determination was incorrect and he was denied due process as a result.

**{4}** A defendant has the burden of proving that they are incompetent by a preponderance of the evidence. *See State v. Chavez*, 2008-NMSC-001, ¶ 11, 143 N.M. 205, 174 P.3d 988. We review a district court's competency determination "only for abuse of discretion, viewing the evidence in the light most favorable to the [district court]'s decision." *State v. Duarte*, 1996-NMCA-038, ¶ 13, 121 N.M. 553, 915 P.2d 309. A district court abuses its discretion if its decision is "obviously erroneous, arbitrary and unwarranted" or "clearly against the logic and effect of the facts and circumstances before the court." *State v. Campbell*, 2007-NMCA-051, ¶ 9, 141 N.M. 543, 157 P.3d 722 (internal quotation marks and citation omitted).

**{5}** Defendant advocates for a de novo review of his competency determination because competency to stand trial implicates his right to due process. However, in the select cases where we have reviewed competency proceedings de novo, the defendant had raised concerns over whether the underlying process was fair. *See State v. Montoya*, 2010-NMCA-067, ¶¶ 10-11, 148 N.M. 495, 238 P.3d 369 ("The district court's determination of reasonable doubt and its ultimate determination of [the d]efendant's incompetence are not in contention in this appeal. Rather, the questions raised by [the

---

[1]Defendant at times states that he was convicted of attempted battery. We are unable to verify, and the judgment does not reflect, any such conviction.

d]efendant on appeal involve his right to raise the issue of competency and the proper process to be afforded him once that issue had been raised."); *State v. Gutierrez*, 2015-NMCA-082, ¶¶ 23-31, 355 P.3d 93 (reversing the district court's competency determination under a de novo review because the procedure used "violated fundamental precepts of due process and was essentially unfair"). Here, Defendant's argument on appeal only concerns the substantive evidence relied on by the district court, not the process under which he was determined to be competent. Accordingly, our review is limited to whether there was an abuse of discretion.

{6}     Defendant has not met his burden of showing that to be the case. "There is a presumption of correctness in the district court's rulings. Accordingly, it is [the d]efendant's burden on appeal to demonstrate any claimed error below." *State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 381 P.2d 1211 (alterations, internal quotation marks, and citation omitted). Defendant's argument is comprised of a summary of his expert's testimony; that she opined he was "chronically low functioning," had "major neurological impairments, major depressive disorder, limited vocabulary, bad memory, no compression [sic] skills," and is not "capable of abstract thought." From this, Defendant simply concludes that "the district court violated [his] rights when it relied solely" on the State's expert in determining that Defendant was competent to stand trial.

{7}     However, the district court did not rely only on the State's expert. It surveyed both expert's testimony, along with its own observations of Defendant throughout the proceedings in this matter. Defendant acknowledges this in his brief. Defendant never articulates how the district court's decision to rely on another expert and its own observations rather than his own expert was "obviously erroneous, arbitrary and unwarranted" or "clearly against the logic and effect of the facts and circumstances before the court." *Campbell*, 2007-NMCA-051, ¶ 9 (internal quotation marks and citation omitted). While Defendant notes that the State's expert did not use the same test as his expert, he cites no authority requiring a particular test be used to determine competency. We note, to the contrary, that a district court need not accept an expert's opinion, even if that opinion is compelling. *See, e.g.*, *State v. Jason F.*, 1998-NMSC-010, ¶ 29, 125 N.M. 111, 957 P.2d 1145; *cf. State v. Gonzales*, 1997-NMSC-050, ¶ 18, 124 N.M. 171, 947 P.2d 128 ("Determining credibility and weighing evidence are tasks entrusted to the [district] court sitting as fact-finder.").

{8}     "[W]here it is evident that there existed reasons for and against the ruling, we may indulge in the usual appellate presumptions to affirm the [district] court." *State v. Trejo*, 1991-NMCA-143, ¶ 7, 113 N.M. 342, 825 P.2d 1252. We therefore conclude that Defendant has not carried his burden of demonstrating that the district court abused its discretion by finding him competent to stand trial.

{9}     Defendant's argument that the district court failed to suspend proceedings until he was found competent to stand trial is also without merit. *See* Rule 5-602.1(E) NMRA ("Upon the filing of a motion for a competency evaluation, further proceedings in the case shall be suspended until the motion is denied or, if the motion is granted, until the issue of the defendant's competency is determined."). After Defendant filed his motion

for a competency evaluation, the only proceedings that occurred were those necessary to determine Defendant's competency. Once the district court found Defendant competent to stand trial, it was free to proceed to sentencing. *See id.* Defendant has not persuaded us of any error in this approach.

## II.    Defendant's Motion to Reconsider

**{10}**    After the district court entered its judgment and sentence, Defendant filed a motion for reconsideration pro se. Defendant's motion asserted that he told his counsel to accept a plea deal, but she misled him into taking the case to trial. It also sought to reduce the sentence to credit him for the jail time he had already served. The district court denied the motion without a hearing, finding that Defendant had been tried twice, represented by multiple attorneys, and the sentencing imposed was based on "all known facts, mitigating and aggravated factors." It also found that Defendant's sentencing "properly accounted for time served." Defendant contends that his due process rights were violated when his motion was denied without a hearing because he did not have the opportunity to present evidence or witnesses and the district court did not adequately explain its reasons for denying the motion.

**{11}**    The State suggests that we should review this issue under an abuse of discretion standard given the district court's "broad sentencing discretion." *See State v. Lavone*, 2011-NMCA-084, ¶ 9, 150 N.M. 473, 261 P.3d 1105. However, the argument pressed on appeal concerns what process was owed to Defendant by virtue of his motion to reconsider, rather than the factual underpinnings of the motion and the district court's order. Thus, in contrast to the issue of competency above, we review the process underlying the district court's decision of Defendant's motion to reconsider de novo. *See State v. Salas*, 2017-NMCA-057, ¶ 42, 400 P.3d 251 ("This Court reviews due process claims de novo.").

**{12}**    A procedural due process claim requires us to "analyze whether there exist adequate procedures to assure that all the process that is constitutionally due has been provided before the final deprivation of a protected interest through [s]tate action." *State v. Druktenis*, 2004-NMCA-032, ¶ 47, 135 N.M. 223, 86 P.3d 1050. To determine whether there were adequate procedural safeguards, we must engage in a factually-intensive and policy-driven balancing "of private and government interest, including concerns about 'the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.'" *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). This balancing recognizes that "[t]he amount of process due depends on the particular circumstances of each case." *State ex rel. Torrez v. Whitaker*, 2018-NMSC-005, ¶ 87, 410 P.3d 201 (internal quotation marks and citation omitted). "[N]ot all situations calling for procedural safeguards call for the same kind of procedure." *State v. Guthrie*, 2011-NMSC-014, ¶ 11, 150 N.M. 84, 257 P.3d 904 (emphasis, internal quotation marks, and citation omitted).

**{13}** Although Defendant recognizes that procedural due process is fluid and depends on the circumstances, he engages in none of the case-specific analysis called for by our case law. His argument is limited to a recitation of a number of procedures that our Supreme Court has recognized as "essential elements of the adversary process"; but not all of them are constitutionally mandated in every circumstance. *See Bd. of Educ. of Carlsbad Mun. Schs. v. Harrell*, 1994-NMSC-096, ¶ 25, 118 N.M. 470, 882 P.2d 511; *see also id.* (stating that "some or all of" the essential elements of the adversary process "*may be* required as part of the due process afforded an individual when the government deprives him of life, liberty, or property through the action of a state agency" (emphasis added)). While Defendant asserts that he was owed a hearing where he could present evidence and call witnesses, Rule 5-601 NMRA, which accounts for motions to reconsider expressly, permits the district court to deny the motion without a hearing. *See* Rule 5-601(B).

**{14}** Despite the express language in Rule 5-601(B), Defendant invites us to engage in a complicated and factually-intensive balancing of private and government interests, without developing an argument for how we should do so. *See Druktenis*, 2004-NMCA-032, ¶ 47. Absent any meaningful argument of the factors we weigh when determining what process is owed a defendant, Defendant has not met his burden of demonstrating error on appeal. *See State v. Duttle*, 2017-NMCA-001, ¶ 15, 387 P.3d 885 ("For this Court to rule on an inadequately briefed constitutional issue would essentially require it to do the work on behalf of [the d]efendant."); *State v. Ortiz*, 2009-NMCA-092, ¶ 32, 146 N.M. 873, 215 P.3d 811 ("A party cannot throw out legal theories without connecting them to any elements and any factual support for the elements." (internal quotation marks and citation omitted)); *State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (explaining that appellate courts are under no obligation to review unclear or undeveloped arguments). We therefore reject Defendant's argument that his motion to reconsider required a hearing prior to denial.

### III. Involuntary Manslaughter Instruction

**{15}** Defendant was ultimately convicted of shooting at or from a motor vehicle, which resulted in his voluntary manslaughter conviction being vacated for violating double jeopardy. Nevertheless, he claims it was reversible error for the district court to deny his request to instruct the jury on the lesser-included offense of involuntary manslaughter. Defendant suggests that his instruction was required because "the jury could have found that [he] acted negligently [by] firing back his weapon at a moving vehicle that was shooting at him during a drive-by shooting."

**{16}** When preserved, we review an argument of failure to instruct de novo. *See State v. Ellis*, 2008-NMSC-032, ¶ 14, 144 N.M. 253, 186 P.3d 245. If the issue is not preserved, we review only for fundamental error. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. Defendant asserts that his argument was preserved because at his first trial he submitted an involuntary manslaughter instruction to the district court. The State concedes that the issue is preserved.

**{17}** Even if we were to assume without deciding that the issue is preserved, Defendant cannot show reversible error. *See id.* Defendant offers no explanation of how he was prejudiced by the district court's denial of his jury instruction. *See State v. Fernandez*, 1994-NMCA-056, ¶ 13, 117 N.M. 673, 875 P.2d 1104 ("In the absence of prejudice, there is no reversible error."). Even had the instruction been given, any resulting conviction would have been vacated, because his conviction of voluntary manslaughter—a greater offense than involuntary manslaughter—was vacated on double jeopardy grounds. *See State v. Montoya*, 2013-NMSC-020, ¶ 55, 306 P.3d 426 ("[W]here one of two otherwise valid convictions must be vacated to avoid violation of double jeopardy protections, we must vacate the conviction carrying the shorter sentence."); *cf. State v. Melton*, 1984-NMCA-115, ¶ 14, 102 N.M. 120, 692 P.2d 45 (noting that no prejudice occurred when the claimed error related to a charge of which the defendant was acquitted). However, given the fact that Defendant's conviction of a greater charge, voluntary manslaughter, was vacated on double jeopardy grounds, this claim of error is moot and we address it no further.

### IV.    Defendant's Right to a Speedy Trial

**{18}** In cases where the right to a speedy trial is at issue, New Mexico courts employ the test articulated in *Barker v. Wingo*, 407 U.S. 514 (1972). *See State v. Smith*, 2016-NMSC-007, ¶ 58, 367 P.3d 420. The test consists of four factors that allow us to "weigh the conduct of both the [state] and the defendant." *Id.* (internal quotation marks and citation omitted). We balance "(1) the length of the delay; (2) the reasons for the delay; (3) the timeliness and manner in which the defendant asserted [their] speedy trial right; and (4) the particular prejudice that the defendant actually suffered." *Id.* "Although we defer to the district court's factual findings concerning each factor, we independently review the record to determine whether a defendant was denied [their] speedy trial right, and we weigh and balance the *Barker* factors de novo." *State v. Lujan*, 2015-NMCA-032, ¶ 10, 345 P.3d 1103.

**{19}** "The 'heart' of the speedy trial right 'is preventing prejudice to the accused.'" *Id.* ¶ 20 (quoting *State v. Garza*, 2009-NMSC-038, ¶ 12, 146 N.M. 499, 212 P.3d 387). Generally, the defendant has the burden of proving "particularized prejudice." *State v. Serros*, 2016-NMSC-008, ¶ 86, 366 P.3d 1121 (internal quotation marks and citation omitted). We will presume prejudice if the other factors—length of delay, reasons for the delay, and assertion of the right—all weigh heavily in the defendant's favor. *Id.* Otherwise, the defendant "must show particularized prejudice of the kind against which the speedy trial right is intended to protect." *Garza*, 2009-NMSC-038, ¶ 39.

**{20}** Defendant concedes that the length of delay does not weigh heavily in his favor, and we agree. This is because the delay was only one month longer than the delay which is required in complex cases to trigger our analysis under *Barker*. "[T]he length of delay acts as a triggering mechanism requiring further inquiry into the *Barker* factors once the delay has reached a specified amount of time." *State v. Spearman*, 2012-NMSC-023, ¶ 20, 283 P.3d 272 (internal quotation marks and citation omitted). For complex cases, that delay is eighteen months. *See id.* ¶ 21. Here, the district court

determined that this was a complex case, and the length of delay was nineteen months. "A delay that scarcely crosses the bare minimum needed to trigger judicial examination of the claim is of little help to a defendant claiming a speedy trial violation." *Serros*, 2016-NMSC-008, ¶ 26 (internal quotation marks and citation omitted). The length of delay here accordingly does not weigh heavily in favor of Defendant. *See Garza*, 2009-NMSC-038, ¶ 24 (finding a delay of one month and six days beyond the triggering date did not weigh heavily in the defendant's favor).

**{21}** Because one of the *Barker* factors does not weigh heavily in favor of Defendant, he must show particularized prejudice in order to prove a speedy trial violation. *See State v. Wood*, 2022-NMCA-009, ¶ 21, 504 P.3d 579 ("In a speedy trial analysis, if any one of the three *Barker* factors does not weigh heavily in favor of a defendant, as is the case here, [the d]efendant must show particularized prejudice in order to prove their speedy trial [right] was violated."); *see also Garza*, 2009-NMSC-038, ¶¶ 39-40 (concluding that the defendant must show particularized prejudice because the *Barker* factors did not weigh heavily in his favor). Defendant's only mention of prejudice on appeal is that he cited to other cases in his motion to dismiss for speedy trial violations where other defendants showed actual prejudice. Defendant never argued or provided evidence in his motion that his situation was similar to those other defendants. The district court found that there was no evidence of particularized prejudice to Defendant. We agree with the district court, because Defendant's motion merely articulated generalized and ubiquitous difficulties due to pretrial incarceration, and the anxieties that stem from it. While Defendant stated that he would provide testimony concerning his mental state at a hearing on the motion, he did not do so. Pending criminal cases are undoubtedly a source of anxiety, but this anxiety generally does not contribute to "undue prejudice." *State v. Castro*, 2017-NMSC-027, ¶ 27, 402 P.3d 688 (observing "that the criminal process inevitably causes anxiety for defendants, but [appellate courts] focus only on undue prejudice"). Similarly, although Defendant asserted that his defense was impaired, he only did so by speculating over the potential unavailability of witnesses and other evidence. However, "[u]nspecified allegations of an impaired defense are unpersuasive." *State v. Grissom*, 1987-NMCA-123, ¶ 48, 106 N.M. 555, 746 P.2d 661, *overruled on other grounds by Salandre v. State*, 1991-NMSC-016, 111 N.M. 422, 806 P.2d 562. Absent any evidence of particularized prejudice to Defendant, "we cannot conclude that [his] right to a speedy trial was violated." *See Garza*, 2009-NMSC-038, ¶ 40.

## V.    Cumulative Error

**{22}** "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *State v. Duffy*, 1998-NMSC-014, ¶ 29, 126 N.M. 132, 967 P.2d 807, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. If there is no error, "there is no cumulative error." *State v. Aragon*, 1999-NMCA-060, ¶ 19, 127 N.M. 393, 981 P.2d 1211. Defendant has not persuaded us that there was error below, let alone a series of errors resulting in an abundance of prejudice, and as such we find no cumulative error.

**CONCLUSION**

**{23}**   For the foregoing reasons, we affirm.

**{24}   IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**MEGAN P. DUFFY, Judge**